WULBERN et al. v. DRAKE.

(Circuit Court of Appeals, Fourth Circuit. February 3, 1903.)

No. 452.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—PERSONS ENGAGED CHIEFLY IN FARMING.

An alleged bankrupt managed and controlled plantations containing over 1,100 acres, the greater part of which he owned, the title to the remainder being in his children. Nearly all of the land was cultivated, a part by hired labor and the remainder by tenants. He resided on the land, and devoted the principal part of his time to the carrying on of its cultivation, upon which he relied as his principal source of income. He also maintained on the plantation where he resided a store or commissary, for which he purchased goods, supplies, and fertilizers to the amount of about $20,000 a year, and sold the same, almost exclusively, to his employés and tenants. *Held,* that he was "engaged chiefly in farming or the tillage of the soil," within the meaning of Bankr. Act, § 4b [U. S. Comp. St. 1901, p. 3423], and could not be adjudged an involuntary bankrupt.

Appeal from the District Court of the United States for the District of South Carolina, in Bankruptcy.

For opinion below, see 114 Fed. 229.

On the 31st of December, 1901, C. Wulbern & Co., Simons-Evans Manufacturing Company, and Drake-Innes-Green Shoe Company filed a petition against J. N. Drake, of the county of Marlborough, in the District of South Carolina, alleging that petitioners were creditors in excess of $500 of the said Drake, and that he owed debts in excess of $1,000. The petitioners further alleged that the said Drake, within four months next preceding the date of the petition, had committed an act of bankruptcy by a general assignment for the benefit of creditors. The said Drake filed his answer to the petition as follows: "And now the said J. N. Drake appears, and denies that he comes within the terms of the act of the Congress of the United States relating to bankruptcy, and, on the contrary, alleges that he was, before and at the time of contracting the debts in said petition mentioned, and is now, engaged chiefly in farming and the tillage of the soil, and avers that he should not be declared bankrupt for any cause in said petition alleged, and this he prays may be inquired of by the court." Upon the issue thus raised the testimony was taken by the court, and it was ascertained that Drake owed Wulbern & Co. one note of $1,400, due November 1, 1901, and also an account for goods and merchandise sold and delivered to him of $1,165.32; that he owed the Simons-Evans Company an account for goods sold and delivered to him the sum of $205.87; and the Drake-Innes-Green Shoe Company an account for goods and merchandise sold and delivered to him of $177.95.

The facts, based on the testimony in the record, are, in substance, that all of these debts were contracted by Drake for dry goods, groceries, and supplies for a store or commissary, as some called it, kept in the usual form

¶ 1. What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

of a country store, which he conducted on his premises near his home; that he sold goods from his said store to his tenants and employés, and in a few instances to outside persons; that the store was kept open generally in the daytime, and was in charge of Drake's nephew; that such patrons as applied were served; that the letterheads upon which orders were made for the goods bought for the store contained the words, "J. N. Drake, Merchant and Planter." It was further shown that Drake lived in the country about 10 miles from Bennettsville, in the county of Marlborough; that in the year 1901, at the time the debts set forth in the petition were contracted, and up to and including the petition in bankruptcy, he had under cultivation one plantation containing 350 acres, another place containing 225 acres, and still another of 85 acres, the title to all of which was in his name; that, besides this, he had in control a tract of 450 acres, the title to which was in his children's name; that the principal product of these plantations was cotton and corn, and that the larger part of the land described was in cultivation; that some of the lands were let to tenants by Drake for part of the crops produced, some of it to tenants for a stipulated rental, and the other was cultivated by Drake himself through employed laborers at fixed wages. Drake bought all of the fertilizers for the lands, and provided supplies for the laborers and tenants, these fertilizers and supplies being procured by the laborers and tenants from the store or commissary heretofore described. Drake superintended all of the farming operations, as well those of the croppers and tenants as those conducted by himself, and attended personally to gathering the crops, to ginning the cotton and selling the crops. That on the several farms about 42 plows, with the necessary stock, were employed, one-third of which he operated with hired labor, and the remainder were used by tenants and croppers. Drake furnished the stock generally, but in some instances he sold it to tenants, to be paid for when the crops were matured and sold. That Drake paid his hands out of the store, and also let tenants and croppers have goods and supplies in their mutual dealings. That Drake did not solicit trade outside of those upon his farms, although he sold goods to such persons as applied. That he bought for the store $15,000 or $20,000 worth of goods and supplies a year. That at the time of the assignment there were accounts due on the books of the store to about the amount of $5,000, all of which was due by tenants and croppers except about $300. It was also shown that on many of the plantations in that section it was the custom for the landowner to keep a store or commissary for the purpose of supplying those who worked upon his lands with fertilizers, groceries, and such articles of food and clothing as might be necessary, and that this business was a mere adjunct to the farming operations. The testimony shows further that Drake, for six or eight years previous to the filing of the petition, had borrowed on an average of $5,000 a year from the bank of Marlborough, the money being used in aid of his farming operations, and giving as security therefor liens on his crops, his horses and mules, and sometimes mortgages on his lands; that his principal income was derived from his farming operations, and that he relied on this as the source from which to obtain the means to maintain and support himself and family. It was also in evidence that Drake, at the time of the filing of the petition, owed debts to a considerable amount besides those mentioned in it. It was admitted that Drake had executed, just before the filing of the petition, a general assignment of all his property, in which he had secured all of his debts, without preference. The District Court held upon the evidence that Drake was a person engaged chiefly in farming and the tillage of the soil, and therefore could not be adjudged a bankrupt in an involuntary proceeding, and rendered a decree accordingly. From this decree the petitioners appealed to this court.

F. L. Willcox, for appellants.

Knox Livingston, for appellee.

Before GOFF, Circuit Judge, and PURNELL and BOYD, District Judges.

BOYD, District Judge (after stating the facts as above). The law under which the question presented in this case arises will be found in Bankr. Act, § 4b [U. S. Comp. St. 1901, p. 3423] :

"Any natural person, except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. Private bankers, but not national banks or banks incorporated under state or territorial laws, may be adjudged involuntary bankrupts."

We think the District Judge amply justified, upon the testimony, in finding as a fact that Drake was chiefly engaged in farming. The counsel for the petitioners made the point and contended that much of the lands described were not cultivated by Drake personally; that his relation to this was only that of landlord, and his tenants were the farmers; and that as to the other lands, the principal part of the manual labor being performed by hirelings and not by Drake himself, he could not be regarded as a farmer. We cannot agree with this view as to the meaning of the term, "farmer, or one engaged in the tillage of the soil," as the same should be construed in compliance with the spirit and language of the statute; but, on the other hand, we coincide with the conclusion of the District Judge when he declares, "within the purview of this statute it is understood to mean the business of cultivating land or employing it for purposes of husbandry."

The statute does not apply to such persons only as are engaged solely in farming or tillage of the soil, but exempts from the provisions relating to involuntary bankruptcy all persons who are chiefly so engaged. It does not matter, therefore, if the person may have other business or other interests, if his principal occupation is that of an agriculturalist, if that is the business to which he devotes more largely his time and attention, which he relies upon as a source of income for the support of himself and family, or for the accumulation of wealth, although, as before suggested, he may have other interests or other investments, yet the conclusion must be that his chief business is that of farming or tillage of the soil. The presence of an establishment like the one maintained by Drake on his premises as a store or commissary was of great convenience, to both the landowner and his tenants, croppers, and employés, for it afforded a place from which they could readily obtain necessary supplies. It saved them from the loss of time necessary to go to distant places to make their purchases, and it also provided them an opportunity to procure necessities without using ready cash. It was therefore a benefit to both Drake and those employed in cultivating his lands to have his store or commissary where it was. When, upon the testimony, it was found as a fact that Drake was engaged chiefly in farming, which view is fully sustained by the testimony, it was the duty of the court, under the law, to dismiss the petition.

The decision of the District Judge is affirmed.