In re JOHNSON.

(District Court, N. D. New York. January 7, 1907.)

BANKRUPTCY—PERSONS ENGAGED IN FARMING—MARRIED WOMEN.
    Where a farm was conveyed to a married woman for the purpose of placing it beyond the reach of her husband's creditors, and she and her husband thereafter operated the farm, with an agreement that it was to be carried on as his, the wife performing only such services as were generally performed by a farmer's wife, the husband taking full charge of the farming operations, the wife was not "a person engaged chiefly in farming or tillage of the soil," within Bankr. Act July 1, 1898, c. 541,

§ 4, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], providing that such persons may not be adjudged involuntary bankrupts.

[Ed. Note.—What persons are subject to bankruptcy law, see Mattoon Nat. Bank of Mattoon, Ill. v. First Nat. Bank of Mattoon; Ill., 42 C. C. A. 4.]

In Bankruptcy. Motion to confirm report of special master to whom this matter was referred and for an order thereon adjudging Mary E. Johnson a bankrupt.

John E. Smith, for petitioner.
W. E. Lounsberry (M. H. Kiley, of counsel), opposed.

RAY, District Judge. May 29, 1906, John E. Smith, a creditor of Mary E. Johnson, filed his petition asking to have her adjudicated a bankrupt, alleging as an act of bankruptcy that May 22, 1906, she had suffered and permitted, while insolvent, her son, one W. S. Johnson, to obtain a preference through legal proceedings, and not having at least five days before a sale of the property affected by such preference vacated or discharged such preference. The alleged preference consists in her having allowed and permitted her said son to obtain, secretly, a judgment against her in the sum of about $1,150.51, immediately issue execution thereon and levy upon all her property, except a farm mortgaged for more, it is alleged, than its value. The petition alleged that Mary E. Johnson is not a wage-earner, or a person engaged chiefly in farming or the tillage of the soil. The alleged bankrupt filed an answer, not demanding a jury trial, denying the act of bankruptcy, and also denying the allegation that she is not a person engaged chiefly in farming or the tillage of the soil, and alleging affirmatively that at the time of the filing of the petition and of the commission of the act alleged to be an act of bankruptcy she was "a person engaged chiefly in farming or the tillage of the soil."

On a full trial and hearing the special master found and reported, with the evidence, that the alleged bankrupt had committed the act of bankruptcy alleged, and was not a person engaged chiefly in farming or the tillage of the soil. This report was filed October 4, 1906, and subsequently exceptions to these findings and to the report were permitted to be filed nunc pro tunc. The evidence disclosed that the act of bankruptcy was committed as alleged. The petitioner urges that the judgment was obtained and the levy made clandestinely and are based upon a fraudulent and fictitious claim. While there is evidence to sustain this contention, to some extent at least, that question is immaterial here. However fraudulent the conduct of the parties to the judgment and execution may have been, the remedy is in the state courts if the alleged bankrupt was at the times mentioned not subject to proceedings in bankruptcy, being "a person engaged chiefly in farming or the tillage of the soil."

The facts upon which the determination of the case depend may be summarized as follows: Some years ago William J. Johnson, the husband of said Mary E. Johnson, held a contract for a farm in Fenner, Madison county. Because of sickness and financial difficulties he assigned this to his wife, Mary E. Johnson, the alleged bank-

149 F.—55

rupt. Subsequently, and April 30, 1904, this farm was deeded to her. This deed was made to the wife, Mary E. Johnson, because of the involved financial condition of the husband, William J. Johnson, and with the general understanding it was to be run and managed in the same manner it had been while the husband held the contract; that is, by the husband and as his, except so far as it was necessary to do business in the name of the wife so as to prevent creditors of the husband from setting aside the conveyance and seizing the products of the farm as the property of the husband. John E. Smith, the petitioning creditor here, understood this, as he attended to the business in transferring the farm. The alleged bankrupt and her husband, until about the time of the commencement of these proceedings, have occupied the farm, and it has been run and managed in the manner indicated. The husband, with the assistance of hired help, has done the farm work and usually sold and disposed of the products, using the proceeds of sales as his own and as he pleased. He has not been employed by his wife as her agent, nor has he accounted to her. He was not employed by her as a servant, or hired man in the conduct and management of the farm or in doing the work thereon. The wife has occasionally sold products of the farm and purchased supplies, etc. But all this has been done in the usual and customary way incident to the relation of husband and wife where the husband holds the title to a farm and runs the business of farming thereon. At times and intervals she has assisted in doing the field farm work as was customary on all farms in the vicinity. She attended to the household work and to the manufacture of the milk from the cows kept on the farm into butter, and occasionally she sold it. Occasionally she gave directions to help on the farm as to the work to be done, but all this was done in the mode and manner customary on farms where the husband holds the title and runs the business. As a rule, when credit was obtained for money or property for farm business and farm purposes and obligations were given, the husband and wife joined in executing the obligation. As to store accounts for ordinary supplies credit was given the wife, as it was understood in the vicinity that she held the title to the real and personal property, and was the only one pecuniarily responsible. When the farm was deeded to the wife, the alleged bankrupt, the money to pay for it and to supply other needs for the farm was borrowed of Mr. Smith on bond and mortgage on the farm itself, and this mortgage was executed by both husband and wife. Out of this and subsequent credit to both for the purpose of running the farm grows a large part, if not all, of the indebtedness of the alleged bankrupt to the petitioner.

With this state of facts existing at the time of the filing of the petition herein, was this woman, Mary E. Johnson, within the meaning of section 4 of the act of Congress entitled "An act to establish a uniform system of bankruptcy throughout the United States," approved July 1, 1898, as amended February 5, 1903, "a person engaged chiefly in farming or the tillage of the soil"? If she was, she was not and is not within the purview of the act, and cannot be adjudicated a bankrupt, for that section provides:

"Who may become bankrupts—(a) Any person who owes debts, except a corporation, shall be entitled to the benefits of this act as a voluntary bankrupt.

"(b) Any natural person, except a wage-earner, or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act." Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423].

It is clear that she was not a person engaged chiefly in the tillage of the soil. Conceding that a person owning and living on a farm who does no work thereon, but who hires all the help and who directs all the work for his or her benefit and who thus causes the soil of the farm to be tilled for his or her benefit, and who conducts no other business, is engaged chiefly in the tillage of the soil, still the alleged bankrupt, Mary E. Johnson, is not such a person, for she was not thus engaged. Such was not her business. Was she engaged chiefly in farming? Her husband was a farmer and engaged in tilling the soil, and this was his main and chief business. She, as his wife, aided and assisted him, as is customary, in making the butter, in assisting about chores incidental to farming, in keeping the farmhouse in order, in preparing meals and sleeping apartments for the husband and the farm help.

In name the wife owned the business. The paper title to the farm was in her. In fact, she did not. The business was being run by the husband for his own benefit, and only incidentally and indirectly the benefit of the wife, and in the same manner all farmers' wives are aided and benefited by the proper management and running of the farms on which husbands and wives live and which the husbands own and control. It is unnecessary to say that a woman who is a wife may be a farmer. If she owns or hires a farm and is engaged in running it, she is a farmer within the meaning of the act. But the mere fact that she actually owns a farm does not make her a farmer. In re Matson (D. C.) 123 Fed. 743. Is the wife of a farmer who owns and runs a farm a farmer, or engaged in farming, because of the facts that she lives with him and keeps his house and cooks his meals and cares for his clothing, and manufactures the milk from the dairy into butter or cheese and occasionally assists in doing farm chores having no other business? The services of the wife belong to the husband. It is her duty to do all those things so far as circumstances demand and permit. She is not engaged in a separate and independent business. She demands and is entitled in return to a support from the husband. Is the wife of a blacksmith a blacksmith because she is the wife of a blacksmith and keeps his house, and occasionally sweeps the shop? Or is the wife of a merchant a merchant because of the facts that she is the wife of a merchant, and keeps his house and incidentally assists him by selling goods behind the counter? The word "farmer" is synonymous with agriculturist, husbandman, cultivator, or tiller of the soil. (Soule.) The Century Dictionary says a farmer is "one who cultivates a farm either as owner or lessee; in general one who tills the soil." This dictionary has the word "farmeress" defined

as "a woman who farms; a farmer's wife." In Johnson v. Guarantee & Accident Co., 115 Mich. 86, 72 N. W. 1115, 40 L. R. A. 440, 69 Am. St. Rep. 549, it was held:

"One having regular clerical employment in a city, but whose home is upon a farm, where he spends his Sundays and one night in each week, the management of which is, in his absence, entirely in the hands of men hired by him for the purpose, is not a 'farmer,' within the terms of an accident insurance policy classing farming as a hazardous employment."

Plaintiff in that case testified as to his running the farm as follows:

"Two men were managing my farm at the time of the accident. It was their business to take care of the stock. Between them they had the entire charge of it. That included the bull. I left everything in charge of the two men. When I was there, I took charge of it as I saw fit."

The court said:

"We think there was no evidence tending to show that plaintiff was a farmer, within the terms of the policy, until his employers, Hull Bros., had ceased to do business. The fact that he lived upon his farm, and carried it on through others, does not make him a 'farmer,' within the meaning of that term as used in these accident policies. He was at home only from Saturday night to Monday morning, and on Wednesday night, of each week. There is no testimony to show that during that time he was engaged in the actual work of a farmer, so as to incur the more hazardous risks incident to that business."

In McCue v. Tunstead, 65 Cal. 506, 4 Pac. 510, it was held that:

"A farmer is one who resides on a farm with his family, cultivating such farm, and mainly deriving his support from it, though he is also the publisher of a weekly newspaper and the proprietor of patent medicines."

In re Slade's Estate, 122 Cal. 434, 55 Pac. 158, it was held that a farmer is one who is devoted to the tillage of the soil, and persons who follow this occupation may call themselves horticulturists, viticulturists, or gardeners, but they are farmers. In Wulbern v. Drake, 56 C. C. A. 643, 120 Fed. 493–495, it was held that the words in the bankruptcy act, "a person engaged chiefly in farming or the tillage of the soil," mean the business of cultivating land or employing it for the purpose of husbandry. In re Drake (D. C.) 114 Fed. 229–231, it was said, the meaning of these words being under consideration:

"Nor will it profit to trace historically the meaning of the word 'farming.' In its purely agricultural sense, its use is comparatively modern. Within the purview of this statute it is understood to mean the business of cultivating land, or employing it for the purposes of husbandry; and a farm is a tract devoted to cultivation under a single control, whether it be large or small, isolated, or made up of many parcels. For a long time after the words began to be used in an agricultural sense they were applied to lands held on lease, and 'demise, lease, and to farm let' are still the operative words of a lease, but they are, in modern use, applied without respect to nature of tenure. Robinson Crusoe says, 'I farmed upon my own land.' So it appears that the words have been used in their present sense for nearly 200 years. Under the proofs in this case the defendant had the direction and control of the farming operations upon all the land described, and was 'engaged in farming,' and I am of opinion that these words cannot be given the restricted meaning which would take out of the protection of the statute only those engaged in actual labor upon the farm."

In O'Neil v. Pleasant Prairie Mut. Fire Ins. Co., 71 Wis. 621, 38 N. W. 345, 346, it was held that the term "farmer" means a person

who cultivates a considerable tract of land in some one of the usual recognized ways of farming.

I find no case holding, and I have not been cited to any, that the wife of the farmer, who assists him in the usual and customary way by keeping the house and doing dairy work, is herself a farmer. Congress thought it wise to exclude farmers, those engaged chiefly in the tillage of the soil, from the classes who may be adjudicated involuntary bankrupts. It was thought that this would encourage farming or at least not discourage persons of small means from purchasing farms and farming implements on credit and engaging in that business. But it was not, I think, intended to exclude from the classes who may be adjudicated involuntary bankrupts the wives of farmers who live with their husbands and assist them in the ways mentioned. This case, however, presents a somewhat different aspect, in that the wife held the title to the farm and the work she did was indirectly and in some respects directly in aiding and assisting to do the work on the farm. She also rented in her own name a parcel of land, some 10 acres, which was worked as a part of the farm in question, but by the husband and in the same manner before described. It was all done as a cover and to keep the property from the creditors of the husband, who was the actual owner; the one actually doing the business and working the land for his own support and gain, and incidentally the support of the wife.

I cannot bring myself to the conclusion that where the title to the farm actually owned by the husband is put in the name of the wife to keep it from the husband's creditors, with an agreement and understanding that as between them it is to be run, managed, worked, and treated with its products as his, and is so run, managed, worked, and treated, as was the case here, the wife doing that which farmers' wives usually do, and merely signing her name when necessary to keep up the appearance of ownership in herself, the wife is "a person engaged chiefly in farming or the tillage of the soil" within the intent and meaning of the bankruptcy act.

The report of the special master is approved and confirmed, and the exceptions are overruled. There will be an order of adjudication accordingly.