## H. D. STILL'S SONS v. AMERICAN NAT. BANK et al.

(Circuit Court of Appeals, Fourth Circuit.    December 19, 1913.)

### No. 1,175.

1. BANKRUPTCY (§ 69*)—PERSONS SUBJECT TO ADJUDICATION—PARTNERSHIP ENGAGED IN FARMING—STATUTES—CONSTRUCTION.

Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), provides that any natural person except a wage-earner or a person engaged chiefly in farming or tillage of the soil may be adjudged an involuntary bankrupt. Section 5a declares that a partnership during the continuance of the partnership business, or after its dissolution, and before the settlement, may be adjudged a bankrupt. Held, that section 5a should be construed in connection with section 4b and not separately, and hence did not authorize an adjudication against a partnership engaged chiefly in farming.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 51–53, 56; Dec. Dig. § 69.*]

2. BANKRUPTCY (§ 70*)—PERSONS SUBJECT TO ADJUDICATION—"UNINCORPORATED COMPANY."

A partnership is not an "unincorporated company" within Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), providing that any unincorporated company may be an involuntary bankrupt, so as to authorize its adjudication, though it would be otherwise exempt as a person chiefly engaged in farming.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 70.*]

3. BANKRUPTCY (§ 69*)—PARTNERSHIP—"NATURAL PERSON."

A partnership, except in so far as the distribution of its assets among its creditors by bankruptcy proceedings is concerned, is not an entity separate and distinct from its members so as to make it an artificial person and not a "natural person," within Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), that any natural person, except

a wage-earner or a person engaged chiefly in farming or the tillage of the soil, etc., may be adjudged an involuntary bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 51–53, 56; Dec. Dig. § 69.*

For other definitions, see Words and Phrases, vol. 5, p. 4670.]

Appeal from and Petition to Revise Order of the District Court of the United States for the Eastern District of South Carolina, at Charleston and Columbia; Henry A. Middleton Smith, Judge.

Application by the American National Bank and others, petitioning creditors, for bankruptcy adjudication against H. D. Still's Sons, alleged bankrupt. From an order granting such adjudication, the alleged bankrupt appeals, and also files a petition to revise. Reversed, with directions to dismiss.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

S. G. Mayfield, of Denmark, S. C., and Chas. Carroll Simms, of Barnwell, S. C., for appellant.

Alexander Akerman, of Macon, Ga., and R. J. Southall, of Augusta, Ga., for certain judgment creditors.

George S. Jones, of Macon, Ga., and William H. Fleming, of Augusta, Ga. (Jas. A. Willis and H. L. O'Bannon, both of Barnwell, S. C., W. H. Townsend, of Columbia, S. C., and James Simons and Julian Mitchell, both of Charleston, S. C., on the brief), for appellees.

KNAPP, Circuit Judge. A brief summary of facts will disclose the question to be decided in this case.

On December 27, 1912, the American National Bank of Macon, and other creditors, filed in the District Court of the United States for the Eastern District of South Carolina a petition in bankruptcy against H. D. Still's Sons, a partnership consisting of S. H. Still, L. C. Still, and H. D. Still, Jr., alleging insolvency and the commission of various acts of bankruptcy, and praying that the firm be adjudged a bankrupt as provided by law. The proceeding was solely against the partnership as such, and not against its individual members. A supporting affidavit showed, among other things, that certain creditors had obtained judgments against H. D. Still's Sons in the court of common pleas of Barnwell county in that state, for upwards of $26,000 in the aggregate, and that executions thereon had been issued to the sheriff of that county, who had levied upon "large bodies of real estate" belonging to the partnership and advertised the same for sale on the 6th day of January following.

The usual order was thereupon issued requiring the alleged bankrupts to show cause on January 3d why the marshal should not seize and hold their property subject to the further order of the court, and also requiring the sheriff and the several judgment creditors mentioned to show cause on the same day why the sale of the real es-

tate levied upon should not be restrained and enjoined until the further order of the court.

On the day named a return was filed in which was set forth with considerable detail the nature and extent of the business carried on by the firm and the manner in which it was conducted. From this it appears that the partnership was in possession of a number of farms aggregating nearly 5,500 acres, of which about one half were owned and the other half leased, and that its farming operations were correspondingly extensive. It is stated, for example, that the value of the crops marketed in 1910, 1911, and 1912 exceeded $175,000. The firm also kept a general store or commissary, where miscellaneous goods and farming implements were sold; but this was conducted mainly, as appears, for the convenience of those living or working on its farms, as the patronage of other persons was relatively unimportant. Aside from the management of their partnership affairs, neither of the partners had any separate or individual business.

It was further alleged that the partnership in question was engaged chiefly in farming or the tillage of the soil, and for that reason was not amenable to the bankruptcy act and could not lawfully be adjudged a bankrupt in involuntary proceedings. A return of similar import was filed by the judgment creditors.

Upon these returns and accompanying affidavits a hearing was had on the day named, and an order entered by the District Court which in effect held that H. D. Still's Sons, although principally engaged in farming, could nevertheless be adjudged bankrupt because they were a partnership, and therefore not entitled to the exemption of natural persons, within the meaning of the bankrupt act. Some comment was made upon the extent and methods of their business, which was said to have a commercial character, but the decision was not based upon that ground. Inasmuch, however, as there was a denial of insolvency and of the commission of the alleged acts of bankruptcy, those issues were set for trial by jury, which had been demanded, at a term to be held on the third Tuesday in January at Columbia, the injunction being continued until the further order of the court.

Upon the trial of the issues stated the jury found that the firm was insolvent and had committed the acts of bankruptcy alleged. The matter was thereupon brought on for final hearing and a decree entered adjudging the partnership bankrupt, and from that decree appeal was taken to this court.

In the meantime, however, the alleged bankrupt and the judgment creditors had filed in this court their several petitions to superintend and revise in matter of law the order of January 3, 1913, and those petitions were heard in connection with the argument on this appeal.

It is urged by respondents that the appeal should be dismissed because the pleading by which review is sought is neither an appeal nor a petition to revise, but an attempt to combine the two, and therefore without sanction in the rules and practice of this court. The criticism is not without force, for the pleading in question is of a hybrid nature, indicating that the pleader was in doubt as to the

proper legal remedy and therefore attempted for safety's sake to unite an appeal with a petition to revise. But a technicality of this sort, which may be disregarded without prejudice to the respondents, ought not to prevent consideration of the merits, and we are of opinion, without discussing the point, that this pleading can be and should be treated as an appeal which is sufficient in form and substance to authorize this court to examine and decide the real controversy.

It appears from the record, and is not seriously disputed here, that H. D. Still's Sons were in fact engaged chiefly in farming or the tillage of the soil. Indeed, this was substantially found by the court below, as we read the opinion of the learned judge. It is true that the business carried on by this firm was of exceptional extent, but it differed from ordinary farming only by reason of the greater area of land controlled and the larger number of persons directly employed or held in the relation of tenants. At any rate, we think it not doubtful that an individual conducting the same business would clearly be engaged in "the tillage of the soil," within the meaning of that phrase in the bankruptcy act; and obviously the nature of the business was not affected by the circumstance that it was carried on by a partnership.

The facts thus outlined present this question: Is a partnership so engaged, and because it is a partnership, liable to be adjudicated an involuntary bankrupt, or is it exempt from such adjudication?

[1] The provisions of the bankruptcy act involved in the determination of this question read as follows:

Sec. 4b. Any natural person, except a wage-earner, or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any * * * corporation, except, * * * may be adjudged an involuntary bankrupt, etc.

Sec. 5a. A partnership, during the continuation of the partnership business, or after its dissolution and before the final settlement thereof, may be adjudged a bankrupt.

The argument in support of the decree appealed from rests upon various grounds which we will proceed to briefly examine. It is insisted in the first place that section 5a is an independent and all-embracing provision which includes literally every partnership whatsoever, without regard to the purpose of its formation or the nature or extent of the business in which it may be engaged. In other words, the mere fact that a partnership exists, no matter what its objects or activities, operates to remove it from the excepted classes and to subject it to involuntary bankruptcy, although all its members would be exempt if they carried on the same business as individuals. A farmer, it is said, might work any amount of land, employ hundreds of laborers, and raise crops of unusual value, yet remain completely immune so long as his operations were conducted by himself; but the taking of a partner, for example, with the transfer of title from the individual to a firm, would have the instant effect of making the partnership liable to be forced into bankruptcy if insolvency afterwards occurred. If this be the true construction of the act, the correctness of the decree below cannot be questioned, for the contention resolves itself into an ipse dixit and leaves no room for discussion.

But we are of opinion that the section should not be so construed. It seems to us hardly reasonable to suppose that the Congress, which was careful to exempt from liability to involuntary bankruptcy the two largest classes of persons, wage-earners and tillers of the soil, nevertheless intended that the exemption should not apply when two or more of those persons were associated as partners. Nothing in the nature of the farming industry suggests such an intention, nor does it find support, so far as we are aware, in considerations of public policy. On the contrary, we perceive no reason for placing the individual farmer in the excepted classes which does not equally apply to a partnership of farmers. To impose liability on farmers of the ordinary type merely because they happen to be partners, while exempting the individual farmer however extensive his operations, would be so illogical and purposeless that we cannot believe it was ever in contemplation.

Moreover, the contention here considered involves difficulties which lead to its rejection. In the first section of the act, which is devoted to definitions, it is declared (19) that "persons" shall include corporations, except where otherwise specified, and officers, partnerships, and women, etc. On the face of it this brings a partnership of farmers expressly within the exception in section 4b, because the "persons" referred to, except as the word is otherwise defined, are obviously natural person. But if section 5a is complete in itself and means, as is claimed, that a partnership of farmers can be forced into bankruptcy, because of the partnership, it results that the exemption granted in the former section is taken away by the latter. It can scarcely be doubted, we think, that a construction should be adopted which avoids such a plain contradiction.

[2] It is further argued that a partnership is liable to involuntary bankruptcy, whatever the business in which it is engaged, because a partnership is an unincorporated company within the meaning of section 4b, which imposes such liability upon "any unincorporated company." In a certain sense it may, of course, be said that a partnership is an unincorporated company, for it is commonly described as a company, though of a well-defined class, and it is not incorporated. We are convinced, however, that the Congress did not intend to include partnerships among the unincorporated companies made subject to compulsory proceedings. The terms of the bankruptcy act, like those of statutes in general, are to be interpreted in accordance with their ordinary meaning unless a contrary intention is manifest, of which there is no evidence in this case. When use is made upon occasion of the rather unfamiliar phrase "unincorporated company," it is not commonly understood to refer to partnerships, which are very often mentioned, but rather to voluntary associations and other forms of organization which differ from both partnerships and corporations, and of which there are frequent examples. It is therefore not necessary to infer that the specification of unincorporated companies was intended to include partnerships, since there are many such companies which are not partnerships, and to those companies the phrase undoubtedly

applies. Nor is it to be readily believed that the Congress would speci-
fy unincorporated companies, of which there are comparatively few,
and omit to mention partnerships, which are exceedingly numerous, if
it was understood and intended that the latter were embraced in the
clause imposing liability upon the former. Besides, the contention here
considered involves a contradiction similar to the one above suggested.
As already pointed out, the first section declares that "persons" shall
include partnerships, and this apparently makes a partnership of farm-
ers expressly exempt. But if the phrase "unincorporated companies"
also takes in partnerships, it results that farming partnerships are put
in the excepted classes by the first clause of the section and then made
liable by the succeeding clause. It seems evident that a construction
should be found which avoids such a palpable inconsistency.

The view we entertain of these sections is this: The first paragraph
of section 4, subdivision "a," specifies those who may, namely, any per-
son who owes debts, and those who may not, namely, certain corpora-
tions, have the benefits of voluntary bankruptcy. Subdivision "b" spec-
ifies those who are subject to involuntary bankruptcy, and those who
are not subject because expressly excepted. Partnerships are not men-
tioned in either subdivision. Section 5a, in our judgment, was intended
to be supplementary to and in a sense explanatory of the preceding
section. It will be observed that this section contains neither the word
"voluntary" nor the word "involuntary," but simply provides that a
partnership "may be adjudged a bankrupt." This section was added, as
we believe, for the purpose of making it plain that when the individu-
als composing a partnership are entitled to the benefits of voluntary
bankruptcy the partnership as such is also entitled to the same benefits.
Similarly, when the persons composing a partnership would be subject
to involuntary bankruptcy if they carrie· on the same business as indi-
viduals, the partnership as such is subject to the same liability. It
seems to us that this construction fairly harmonizes the two sections
and gives to both of them proper and consistent application. True, it
may be said that section 5a is unnecessary because the definition of
"persons" in the first section includes partnerships. But in cases of
partnership bankruptcy, whether voluntary or involuntary, conditions
exist which are peculiar to partnerships, such as the marshalling of as-
sets and the like, and for these conditions needful provision is made
in the subsequent paragraphs of this section. If the entire section be
examined, and the purposes of its various subdivisions kept in mind, it
will be found, we think, to support the construction which we have
adopted.

[3] This brings us to the contention, which pervades the entire
argument of respondents, that the exclusion in section 4b of farmers
and tillers of the soil is confined to the "natural persons" engaged in
those occupations and therefore does not exempt a partnership of
farmers because a partnership is not a natural person. In other words,
it is claimed that when two or more persons enter into partnership with
each other a new and distinct entity is created, which differs so mate-
rially from the individual entity of the several members as to be in law

a separate person; that one is a natural person, the other an artificial person; and that these "persons" are so different as respects their legal status that rights and privileges expressly accorded to the former do not inure to and cannot be enjoyed by the latter. Undoubtedly there are a number of cases which go far to sustain this proposition, though some of them, we venture to say, indulge in refinements which to the ordinary mind seem rather fanciful. However, we deem it unnecessary to trace the development of this doctrine in the decisions referred to, because the subject has received recent consideration by the Supreme Court of the United States in Francis v. McNeal, decided May 26, 1913, 228 U. S. 695, 33 Sup. Ct. 701, 57 L. Ed. 1029. In the opinion in that case, from which we quote at considerable length, Mr. Justice Holmes, among other things, says:

Since Cory on Accounts was made more famous by Lindley on Partnership, the notion that the firm is an entity distinct from its members has grown in popularity, and the notion has been confirmed by recent speculations as to the nature of corporations and the oneness of any somewhat permanently combined group without the aid of law. But the fact remains as true as ever that partnership debts are debts of the members of the firm, and that the individual liability of the members is not collateral like that of a surety, but primary and direct, whatever priorities there may be in the marshaling of assets. The nature of the liability is determined by the common law, not by the possible intervention of the bankruptcy act. Therefore ordinarily it would be impossible that a firm should be insolvent while the members of it remain able to pay its debts. * * *

The question is whether the bankruptcy act has established principles inconsistent with these fundamental rules, although the business of such an act is so far as may be to preserve, not to upset, existing relations. It is true that, by section 1, the word "person" as used in the act includes partnerships; * * * that, by section 5a, a partnership may be adjudged a bankrupt; and that, by section 14a, any person may file an application for discharge. No doubt these clauses taken together recognize the firm as an entity for certain purposes, the most important of which, after all, is the old rule as to the prior claim of partnership debts on partnership assets and that of individual debts upon the individual estate. * * * But we see no reason for supposing that it was intended to erect a commercial device for expressing special relations into an absolute and universal formula—a guillotine for cutting off all the consequences admitted to attach to partnerships elsewhere than in the bankruptcy courts. On the contrary, we should infer from section 5, clauses "c" through "g," that the assumption of the bankruptcy act was that the partnership and individual estates both were to be administered. * * *

On the other hand, it would be an anomaly to allow proceedings in bankruptcy against joint debtors from some of whom, at any time before, pending, or after the proceeding, the debt could be collected in full. If such proceedings were allowed, it would be a further anomaly not to distribute all the partnership assets. Yet the individual estate after paying private debts is part of those assets so far as needed. * * * Finally, it would be a third incongruity to grant a discharge in such a case from the debt considered as joint but to leave the same persons liable for it considered as several. We say the same persons, for, however much the difference between firm and members under the statute be dwelt upon, the firm remains at common law a group of men and will be dealt with as such in the ordinary courts for use in which the discharge is granted. * * *

If it be said that the logical result of our opinion is that the partners ought to be put into bankruptcy whenever the firm is, as held by the late Judge Lowell, in an able opinion, in Re Forbes [D. C.] 128 Fed. 137, it is a sufficient answer that no such objection has been taken, but, on the contrary, Francis

has consented and agreed to hand over his property according to the order of the court. So far as Vaccaro v. Security Bank of Memphis, 103 Fed. 436, 442 [43 C. C. A. 279], is inconsistent with the opinion of the majority in Re Bertenshaw, 157 Fed. 363 [85 C. C. A. 61, 17 L. R. A. (N. S.) 886, 13 Ann. Cas. 986], we regard it as sustained by the stronger reasons and as correct.

If we rightly apprehend the import of these observations, they cannot be said to sustain the contention here considered. On the contrary, the opinion seems to imply that when two or more individuals unite with each other, for their mutual benefit, under the "commercial device" of a partnership, "without the aid of law," the partnership thus formed does not bring into existence another and different entity distinct and separable from the persons who compose it, so that, for instance, it can sue and be sued without joining its members, or, as in this case, be put into involuntary bankruptcy by itself while the partners as individuals remain strangers to the proceeding. We do not, however, rest our conclusions herein upon the fact that the proceedings under review are directed against the partnership only, whatever doubt of their validity may arise from that fact, but upon the broader conception which appears to be indicated by the views of the Supreme Court above recited. If, as Mr. Justice Holmes declares, the most important purpose for which we may "recognize" the partnership as an entity has to do merely with the distribution of assets, a purpose without the slightest bearing upon the question here involved, we may well be convinced that the difference between a natural person and a partnership—that is, two or more natural persons using this "commercial device" for their joint operations—is quite insufficient, within the intent of the bankruptcy act, to impose upon partnerships a liability from which natural persons are exempt. In the light of reason and authority we are constrained to hold that a partnership "engaged chiefly in farming or the tillage of the soil" has the same immunity from involuntary bankruptcy as a "natural person" of like avocation.

And this view is confirmed by belief that it accords with the intention of Congress. Examination of the debates in both Houses when the bankruptcy measure was pending discloses the frequently expressed purpose to exempt farmers as a class from compulsory proceedings. In assigning reasons for this exemption reference was made to the fact that the property of farmers consists mainly of real estate and permanent fixtures, which cannot be removed or concealed, and that incumbrances upon such property are usually matters of public record. Primarily, as appears, it was sought to impose involuntary bankruptcy upon traders and middlemen, because of the wider range of their transactions, the convertible nature of their assets, and the inadequacy of state laws to prevent frauds upon their creditors. In short, the whole course of discussion indicates a purpose to exempt from liability the business or occupation of farming, and is quite inconsistent with any intent that the exemption should not apply to a partnership of farmers.

For the reasons above stated, we are of opinion that the partnership of H. D. Still's Sons was not liable to be adjudged an involuntary bankrupt, and therefore the court below was in error in decreeing adjudication. It follows that the decree appealed from should be re-

versed, and the proceedings remanded to the District Court for the Eastern District of South Carolina, with instructions to dismiss the petition.

Reversed.