In re FLUSHING MALL CO., a partnership, Flushing Holding Co., a partnership, Debtors.

Nos. 78 B 1420, 1421.

United States District Court, S. D. New York.

Sept. 17, 1980.

Ballon, Stoll & Itzler by Burton D. Strumpf, New York City, for appellants.

Moses & Singer, New York City, for appellees.

## MEMORANDUM OPINION

MOTLEY, District Judge.

This is an appeal from the decision of the Bankruptcy Court, Joel Lewittes, Judge, confirming an arrangement, pursuant to Chapter XII[1] of the Bankruptcy Act (Act), of the creditors, Bankers Trust Co. (Bankers) and Lincoln Savings Bank (Lincoln), over the objections of the debtors, Flushing Mall Co. (Flushing Mall) and Flushing Holding Co. (Flushing Holding), and denying Flushing Holding's motion to dismiss the Chapter XII proceeding. The decision of Judge Lewittes is affirmed in all respects.

Flushing Holding is a general partnership and holds a ground lease, which it leased to Flushing Mall, another general partnership involving the same individuals. As ground lessee, Flushing Mall constructed a predominantly residential apartment complex, comprised of residential apartments, retail rental space and a two story Korvette store.

Bankers, one of the secured parties, provided Flushing Mall with an $18 million construction loan mortgage. In making this loan, Bankers relied upon the existence of the Korvette's lease. It also relied on a commitment for a permanent $18 million "take–out" mortgage issued by Lincoln, the second secured party. Finally, Bankers relied on the personal joint and several guarantees of two of Flushing Mall's general partners, Litwin and Swarzman.

---

1. Chapter XII governs, *inter alia*, real property arrangements for persons other than corporations. Cases involving this chapter concern, for the most part, debtors seeking to "cram–down" their plans for rehabilitation over the protests of the sole affected creditor, an issue subject to conflicting judicial rulings. *Compare In re Marietta Cobb Apartments*, 14 C.B.C. 504 (S.D.N.Y.1977), *remanded for further proceedings*, (S.D.N.Y.1977) with *In re Gardens of Cortez*, 585 F.2d 975 (10th Cir. 1978).

The "take–out" commitment,[2] providing for a non–recourse leasehold mortgage, was conditioned upon Lincoln's procurement of $12 million dollars from other participating loan institutions and also upon Flushing Holding's attainment of a rent roll of $2,611,000 for the complex.

Korvette's opened for business in the Fall of 1974 when construction of the complex was almost completed. After Bankers decided to accept the $12 million participation of the Lincoln permanent "take–out" mortgage, the permanent loan was effected and Bankers made its final advance under the construction loan. Bankers assigned its construction loan mortgage to Lincoln. Lincoln modified this mortgage to conform to the terms of the permanent loan as provided for in the "take–out" commitment. Lincoln, in turn, spread this mortgage construction loan to the fee subject to Lincoln's $8 million mortgage loan on the fee. Thus, at the time of closing, Lincoln's interest in the permanent mortgage loan was $6 million and Bankers interest was $12 million. To avoid a potential conflict of interest since Lincoln also held the fee mortgage, Lincoln and Bankers agreed that Bankers would service and administer the permanent leasehold mortgage. Pursuant to this agreement, Lincoln, after closing, assigned its permanent leasehold mortgage to Bankers with Bankers designated as principal and as agent for Lincoln.

From August 16, 1976, Flushing Holding made timely interest and amortization payments until October 1, 1977, when it defaulted on payment on the leasehold mortgage due November 1, 1977. For the next nine months, Flushing Holding and its secured creditors discussed restructuring the debt and, during this period, Flushing Holding paid only two months of debt service.

After extensive but unsuccessful negotiations with Flushing Holding and Flushing Mall, Bankers moved for a judgment of foreclosure and sale in a New York state court action which it had filed. Thereupon, Flushing Holding and Flushing Mall immediately filed petitions for arrangements. When Flushing Mall and Flushing Holding filed their Chapter XII petitions, Flushing Holding was already eight months in arrears in excess of $1 million unpaid debt service. With respect to Flushing Holding, Bankers and Lincoln each filed a plan pursuant to section 466 of the Bankruptcy Act (the Act), 11 U.S.C. § 866, and Bankruptcy Rule 12–36(b), which provided for, in relevant part, 1) deferment until maturity of interest exceeding 6% per year; 2) deferment until maturity of all accrued and unpaid interest through the date of confirmation; 3) modification of monthly debt service; 4) payment of all unsecured creditors designated in the petition of Flushing Holding; 5) full payment of all priority claims; and 6) transfer of leasehold subject to permanent existing leasehold mortgages to a new corporation to be formed with the stock to be owned by the banks.

With respect to Flushing Mall, the plan of the secured parties provided for, in relevant part: 1) alteration of Lincoln's rights by requiring that interest payments under the first mortgage remain the same but that the principal fall due two months later than the current due date; 2) the subordinate mortgage held by Bankers as principal and Lincoln as agent shall be subject to the same alterations and modifications set forth in the Flushing Holding plan with respect to the permanent leasehold mortgage; 3) payment in full of priority claimants and general unsecured creditors; and 4) an order by the Bankruptcy Court authorizing the sale and conveyance of the property of Flushing Mall to a realty corporation for a minimum of $10,000 cash but not exceeding $50,000.

Bankers and Lincoln accepted both plans at duly held meeting of creditors. Flushing

---

**2.** A "take–out" commitment or mortgage refers to "[a]n agreement made by a permanent lending institution to buy a construction mortgage from a mortgage lending agency, upon the completion of construction work... Most mortgage lenders will seek the agreement of a bank ... to purchase the construction mortgage before agreeing to lend to a builder." *Encyclopedic Dictionary of Real Estate Practice*, at 500 (Rev. ed. 1962).

Mall and Flushing Holding also submitted their own plans which provided for: 1) Flushing Mall's extension of the first mortgage held by Lincoln and the extinction of the second mortgage, a collateral lien held by Bankers for itself and as an agent for Lincoln; and 2) Flushing Holding's request to reduce the leasehold mortgage from approximately $18 million to $8 million. Both Bankers and Lincoln rejected these plans.

Lincoln then filed an amended plan with respect to Flushing Mall which provided for, in relevant part: 1) all interest in excess of 6% per year accruing after confirmation shall be deferred to the maturity date of the mortgage held by Lincoln; and 2) the principal debt secured by the mortgage held by Lincoln shall become due two years after the due date presently in effect. Both Lincoln and Bankers accepted this amended plan in writing.

The Bankruptcy Court confirmed these plans over the objections of Flushing Mall and Flushing Holding. This appeal followed.

*Good Faith*

Appellants first claim is that the Bankruptcy Court improperly confirmed the plans of Lincoln and Bankers because the court neglected to order a separate valuation hearing to determine whether appellants had an equity in the property subject to liquidation. The sole basis for appellants' contention appears to be section 467 of the Act, which premises confirmation of an arrangement upon the determination of the Bankruptcy Court that the arrangement and its acceptance by all affected secured creditors are "in good faith."

Section 467, 11 U.S.C. § 867 provides in relevant part:

An arrangement which at the meeting of creditors . . . has been accepted in writing by all creditors affected thereby . . . shall be confirmed by the court when there shall have been made the deposit required under this chapter and under the arrangement, and if the court is satisfied that the arrangement and its acceptance are in good faith and have not been made or procured by any means, promises, or acts forbidden by this title.

Appellants contend on this appeal that these plans are devoid of good faith to the extent that they provide for forced liquidation of the property without regard to any equity and thus contravene the rehabilitative policy underlying all Chapter XII proceedings.

■ The Bankruptcy Court correctly held that section 467 of the Act mandates confirmation of a creditor's plan if the court is satisfied that the conditions set forth in the section are met. This section has been interpreted to require, as the sole conditions for confirmation, the making of a deposit by the secured creditors and the court's finding of good faith in the proposal and acceptance. *See In re Stillbar Construction Co.*, 4 B.C.D. 452, 456 (N.D.Ga.1978); *In re Sherilton Valley Ranch*, 5 B.C.D. 1239 (S.D. Cal.1980).

■ The Bankruptcy Court correctly held that "the requisite showing of good faith at the confirmation stage of Chapter XII contemplates a demonstration by the proponent of the arrangement that a 'successful arrangement is reasonably possible,' workable and not violative of public policy." (Opinion at 24–25) (citations omitted). Appellants have not asserted that the plans confirmed by the court below were made in bad faith on the grounds that they in some manner contravened public policy or were, at best, impracticable, or at worst, quixotic. Appellants, instead, challenge the confirmation of the arrangement on a ground which the Bankruptcy Court rejected.

The crux of appellants' argument is that a finding that the plans fostered rehabilitation of the errant debtor is a prerequisite to a finding of good faith under § 467. Appellants urge this court to hold that the forced liquidation of debtors' property, decreed by the plans confirmed by the court below, contravenes the rehabilitative purpose of § 467 and thus mandates a finding of bad faith. In essence, appellants suggest that the language of § 467 is ambiguous and not to be interpreted literally to preclude rehabilitation of debtors as one of the require-

ments of confirmation of an arrangement of the secured creditors.

The presence or absence of appellants' equity in appellant's property subject to sale and conveyance is simply not a factor to be considered by a court in any determination of "good faith." Furthermore, the record reveals that appellants failed to offer any evidence of equity at the confirmation hearing even though the Bankruptcy Court presented them with the opportunity to introduce such evidence.[3] Although appellants stated at the confirmation hearing that they possessed an appraisal indicating that the property was worth in excess of $30 million, appellants failed to offer this appraisal in evidence or submit it to the Bankruptcy Court for examination. (TR. at 15–17).

Clearly the Bankruptcy Court did not prevent appellants from producing evidence of equity in the property. More important, this court concludes that the Bankruptcy Court had no duty to conduct a separate valuation hearing since the issues of equity and the propriety of a forced liquidation of the property are irrelevant to the questions of good faith and the propriety of the Bankruptcy Court's confirmation of the arrangement.

■ This court agrees with the Bankruptcy Court's determination that the validity of an arrangement does not depend upon rehabilitation of the debtor. Rehabilitation of a debtor to permit the debtor to retain property while reaching financial accommodations with secured creditors is only one of the salutary purposes of Chapter XII proceedings. Liquidation of debtor's property, so vigorously opposed by appellants as impermissible in view of the rehabilitative policy underlying Section 467 is, in fact, permitted in Chapter XII proceedings. Bankruptcy Rule 12–38(f), and section 461(12) of the Act, 11 U.S.C. § 861(12) permit an arrangement to provide for the sale or transfer of all or any part of the debtor's property to one or more corporations.

The decisions relied upon by appellants in support of the proposition that rehabilitation of debtors is the prerequisite to a finding of good faith in the arrangement and its acceptance are inapposite. *In re Colonial Realty Investment Co.*, 516 F.2d 154 (1st Cir. 1975); *In re Nevada Tower Assocs.*, 14 C.B.C. 146 (S.D.N.Y.1977); and *In the Matter of John Bee Brown*, 10 C.B.C. 527 (D.Conn.1976) stand only for the proposition that aborting a Chapter XII proceeding at the stage when a possibility of rehabilitation exists and no plan is yet before the court which could be confirmed is contrary to the spirit of the Act and thus improper. By contrast, in the confirmation proceedings below, plans *were* before the court and prolonged but unsuccessful negotiations had occurred. In addition, as discussed above, the mere fact that a debtor is not rehabilitated by the plan is not evidence or proof of bad faith and appellants have not cited any authority for such a proposition.

Appellants also rely heavily on *Matter of KRO Assocs.*, 4 B.C.D. 462 (S.D.N.Y.1978) and *In re 750 Avenue Assocs.*, 78 B 190 (1979) each of which is a decision that involves entirely different provisions of the Act. These cases concern confirmation of a plan proposed by a debtor pursuant to section 468 of the Act and the issue before the courts was whether a plan proposed by a debtor yet not accepted by a single affected creditor could be "crammed down" on the secured creditors that had rejected the plan. In the case at hand, section 467 and not section 468 applies. As the Bankruptcy Court correctly observed, section 467 concerns confirmation of a plan whether the plan was proposed by either the debtor or the creditor pursuant to the provisions of Bankruptcy Rule 12–36(b). Where, as in the confirmation proceedings below, the court has determined that the creditors' plans meet the requirements of section 467, confirmation is mandated without regard to the unaccepted debtor's plan.

The court, for the reasons stated above, affirms the ruling of the Bankruptcy Court that the plans of Bankers and Lincoln were not required to provide for rehabilitation of the debtors to permit the debtors to retain possession of the property for the court to

reach the determination that the plans were made in good faith.[3]

*Creditor Status*

Appellants claim that the Bankruptcy Court erred in its ruling below that Flushing Mall was not an affected creditor within the meaning of section 407 of the Act and that its consent to the arrangement was not required prior to confirmation. The basis for this claim is that Flushing Mall, on the eve of confirmation, filed a claim against Flushing Holding in which Flushing Mall asserted that it, as fee owner of the premises, mortgaged the fee estate as additional security for the leasehold mortgage. To the extent that the fee interest may be used to satisfy the mortgage debt of Bankers in a foreclosure proceeding, Flushing Mall contends, Flushing Mall as a subrogee to Bankers, should be classified as an unsecured creditor whose claim should be included among the claims to be paid to the unsecured creditors.

The Bankruptcy Court properly rejected appellant Flushing Mall's claim regarding its status as an affected creditor. As the Bankruptcy Court observed, an affected creditor in a Chapter XII proceeding may hold either an unsecured or secured claim. Bankruptcy Act § 406(5), 11 U.S.C. § 806(5). To be categorized as an affected creditor, however, creditors of any class must have their interests materially and adversely affected by the arrangement. Bankruptcy Act § 407, 11 U.S.C. § 807. Since the arrangement confirmed in the proceedings of the lower court did not in any manner contemplate a foreclosure, a procedure that undoubtedly would have "materially and adversely" affected Flushing Mall, Flushing Mall may not be considered an affected creditor whose consent is required prior to the confirmation of an arrangement pursuant to section 467.

Although appellants deny that they contended in the confirmation proceedings that they should be classified as affected creditors, a review of the record reveals that counsel did indeed make this claim. (TR. at 75). Related to this contention is appellants' argument, not raised at the proceedings below, that Flushing Mall possesses a contingent subrogation right against Flushing Holding that should have been considered in the proceedings below. Flushing Mall's argument, seriously flawed, seems to be groundless. Bankers' plan does not contemplate foreclosure. This plan provides *for a court–ordered sale and conveyance of* the property to a separate corporation, divesting Flushing Mall of any fee interest in the property. Even if a foreclosure were imminent, Flushing Mall would lack any ownership interest upon which to premise a claim of any nature against Flushing Holding. In sum, since Flushing Mall cannot be categorized as an affected creditor and it lacks a provable claim requiring payment upon confirmation, the Bankruptcy Court correctly ruled that the consent of Flushing Mall was not required prior to the confirmation of the plans of Lincoln and Bankers.

*Lack of Subject Matter Jurisdiction*

Appellants also disagree with the Bankruptcy Court's ruling that section 517 of the Act, 11 U.S.C. § 917 permits Lincoln, a member of the Federal Home Loan Bank System, to alter or modify its rights under Lincoln's arrangement. This court fails to discern any error in this ruling. Section 517 provides in relevant part:

> Nothing contained in this Chapter shall be deemed to affect or apply to creditors of any debtor under a mortgage insured pursuant to the National Housing Act and Acts amendatory and supplementary thereto; nor shall its provisions be deemed to allow extension or impairment of any secured obligation held by Homeowners' Loan Bank or member thereof.

---

**3.** Appellants claim that the Banks objected to the submission of evidence relating to value of the property is simply unsupported by the record. During the confirmation proceedings, appellants accused the court of not permitting them to introduce evidence of equity. The court responded that appellants were not being prevented from introducing this evidence or any other evidence relevant to the question of whether the plans before the court should be confirmed. This colloquy between the court and appellants is not to be construed as an implicit recognition that the value of the property and the equity of the debtor is in any way relevant to the issue of good faith in acceptance of the arrangement or its confirmation.

■ As the Bankruptcy Court aptly recognized, the first clause prohibits the application of Chapter XII provisions to creditors of a debtor holding a National Housing Act mortgage, *cf. Monte Vista Lodge v. Guardian Life Ins. Co. of America*, 384 F.2d 126, 129 (9th Cir. 1967) (Chapt. X action), whereas the second clause denies to a Chapter XII debtor the right to affect a secured obligation by extending or impairing it. *In re Consolidated Motor Inns*, 5 C.B.C. 301 (W.D.Ga.1975). However, as here, a secured creditor may consent to be affected. *Cf. Matter of 83rd Realty Co.*, 76 B 1922 (1978). As Lincoln and Bankers have properly consented to have their rights affected, appellants' claim has no merit.

*Article VI of Bankers' Plan*

■ Another point of error, appellants contend, is the inclusion of Article VI in Bankers' plan which refers to the reservation of rights against third parties and the individual partners of the debtors. The basis of this claim is that Article VI is not authorized by the Act and seeks to enlarge the Bank's rights against the partners of the debtors. This argument is without foundation. The Act, section 461(13), provides that a plan may include any other appropriate provisions not inconsistent with the provisions of the Act. Appellants have not cited a statutory provision nullifying Article VI. As a result, this contention must fail.

*Appellants' Amended Plan*

Appellants have submitted on this appeal an amended plan to obviate forced liquidation of the property. Appellants request this court to remand this action so that the Bankruptcy Court may consider this amended plan. In support of this request, appellants rely on the recently decided case, *In re Mallard Assocs.*, 79 Civ. 3519, 20 C.B.C. 1973 (S.D.N.Y. Aug. 30, 1979), for the proposition that a debtor should not be forced to accept a plan of a sole secured creditor which contemplates a forced liquidation analogous to "cram down" provisions antithetical to the rehabilitative purposes of Chapter XII.

Appellants argue that their new plan will better accommodate their own interests as well as conform to the rehabilitative policy underlying Chapter XII.

■ First, appellants' reliance upon *Mallard* is misplaced. Stated in its broadest terms, the issue before the court on this appeal is whether the Bankruptcy Court erred in minimizing the rehabilitative policy of Chapter XII in favor of strict application of the unambiguous strictures of section 467 of the Act. Completely distinguishable on its facts from the instant case, *Mallard* is irrelevant to the disposition of the issue before this court. The court in *Mallard* proceeded under section 468, which applies only in the situation where fewer than all affected creditors have accepted, in writing, a plan for an arrangement and the question is whether a plan may be forced upon unwilling and uncooperative creditors. In the case at hand, all affected creditors, Bankers and Lincoln included, have accepted the plans, triggering the application of section 467 rather than section 468.

As for the amended debtors' plan submitted by appellants, the court notes that appellants did not present this plan to the Bankruptcy Court even though they had ample opportunity to do so. The role of this court on appeal is necessarily narrow, and confined to an examination of the record below for clearly erroneous factual findings and errors of law. This court's consideration of the record and the arguments of the parties to this appeal fail to reveal any error in any respect to justify a remand on any ground. Since appellants did not present this amended plan as one of the issues of appeal and no grounds exist for remand, the court is not required to consider it.