In re Lyle Duaine LANGE a/k/a Lyle D.
Lange, Vernus Blanche Lange a/k/a
Vernus B. Lange, Debtors.

Bankruptcy No. 82–41088.

United States Bankruptcy Court,
D. Kansas.

April 25, 1984.

Justice B. King of Fisher, Patterson,
Saylor & Smith, Topeka, Kan., for PCA.

Robert L. Baer of Cosgrove, Webb &
Oman, Topeka, Kan., for debtors.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy
Judge.

In this chapter 11 proceeding, both the
debtors and the North Central Kansas Pro-
duction Credit Association (PCA) have filed
disclosure statements and plans. PCA's
plan is one of complete liquidation. The
debtors, who are farmers, announced that
at the appropriate time they will object to
being liquidated in the chapter 11 proceed-
ing. Though PCA's proposed plan calls for
liquidation of all the debtors' assets, coun-
sel for the PCA admits that it should be
amended to conform to § 1123(c) which
prohibits a creditor's plan from liquidating
a chapter 11 individual debtor's exempt
property.

Both parties have submitted for decision
the issue of involuntary liquidation of a
farmer prior to submission of their compet-
ing plans to creditors.

Essentially, there are no other facts nec-
essary for the resolution of the issue be-
fore the Court.

## CONCLUSIONS OF LAW

### 1. Introduction

11 U.S.C. § 303(a) provides:

An involuntary case may be commenced
only under chapter 7 or 11 of this title,
and only against a person, except a farm-
er . . . .

The legislative history states that farm-
ers are excepted from involuntary filings
"because of the cyclical nature of their
business." H.R.Rep. 595, 95th Cong., 1st
Sess. 322 (1977), U.S.Code Cong. & Admin.
News 1978, pp. 5787, 6278. The reason for
the exemption is clear:

One drought year or one year of low
prices, as a result of which a farmer is
temporarily unable to pay his creditors,
should not subject him to involuntary
bankruptcy.

H.R.Rep. 595, 95th Cong., 1st Sess. 322
(1977), U.S.Code Cong. & Admin.News
1978, p. 6278.

The historical reason farmers have been
exempt from involuntary liquidation in
bankruptcy goes beyond the cyclical nature
of the farming business:

Examination of the debates in both Hous-
es when the bankruptcy measure [Act of
1898] was pending discloses the fre-

quently expressed purpose to exempt farmers as a class from compulsory proceedings. In assigning reasons for this exemption reference was made to the fact that the property of farmers consists mainly of real estate and permanent fixtures, which cannot be removed or concealed, and that incumbrances upon such property are usually matters of public record. Primarily, as appears, it was sought to impose involuntary bankruptcy upon traders and middlemen, because of the wider range of their transactions, the convertible nature of their assets, and the inadequacy of state laws to prevent fraud upon their creditors.

*H.D. Still's Sons v. American Nat'l. Bank*, 209 F. 749, 756 (7th Cir.1913). See also 1 Remington on Bankruptcy § 66 at 120 (1950); C. Warren, Bankruptcy in United States History 104, 136 (1935).

Pursuant to 11 U.S.C. § 1112(c), a chapter 11 case may not be converted to a chapter 7 liquidation case "unless the debtor requests such conversion." Reading § 303 and § 1112(c) together, a farmer not already in a bankruptcy proceeding cannot be liquidated against his will, and a farmer in a chapter 11 proceeding cannot be liquidated against his will by conversion to chapter 7.

The argument is made, however, that in the context of chapter 11, a creditor may file a plan after the debtor's exclusive period to file has expired. 11 U.S.C. § 1121. A plan may provide for liquidation of all assets. 11 U.S.C. § 1123(b)(4). Nothing in §§ 1121, 1123 specifically says the creditor's liquidating plan cannot be confirmed over the objection of a farmer. Therefore, if the Code does not say it cannot be done, it must be allowed. For the reasons which follow, the Court rejects this concept. The Court does not hold that such a plan cannot be filed. The Code in fact permits the filing of such a plan. Rather, the Court holds that a filed liquidating plan cannot be *confirmed* over the objection of the farmer.

## 2. Frazier Lemke Act

On March 3, 1933, Congress enacted section 75 of the Bankruptcy Act in an attempt to provide rehabilitation relief to farm debtors. Act of March 3, 1933, ch. 204, 47 Stat. 1467. Section 75 remained in force until March, 1949. On June 28, 1934, Congress amended section 75 by adding subsection "s", called the Frazier-Lemke Act. The Act was the subject of significant constitutional historical litigation as represented by *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Wright v. Vinton Branch of the Mountain Trust Bank (Wright I)*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937); and *Wright v. Union Central Life Ins. Co. (Wright II)*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940). A discussion of the Act and these three cases can be found in Anderson & Rainach, Farmer Reorganizations Under the New Bankruptcy Code, 28 Loyola L.Rev. 439, 447–60 (1982); Feder, What Kind of Bankruptcy Legislation for Farmers, 35 Neb.L.Rev. 39 (1956); Diamond & Litzler, The New Frazier-Lemke Act: A Study, 37 Colum.L.Rev. 1092 (1937); Hanna, Agriculture and the Bankruptcy Act, 19 Minn.L.Rev. 1 (1939); 10 Remington on Bankruptcy, §§ 4001–4131.5 (1947). As finally validated by the Supreme Court, § 75 provided that a petitioning farmer who proposed a composition or extension, but could not obtain the requisite approval by creditors pursuant to § 75(g), could voluntarily amend his petition pursuant to § 75(s) (the so-called Frazier-Lemke Act) or dismiss his case. Pursuant to § 75(s), the farmer was given a period of 3 years during which the farmer could "rent" his property pursuant to § 75(s)(2), and after which the farmer could purchase his property at its appraisal value pursuant to § 75(s)(3). In exchange the farmer had to *voluntarily* agree to be adjudged a bankrupt (§ 75(s)), agree to allow the sale of non-exempt, unnecessary property if the court so ordered (§ 75(s)(2)), and agree to liquidation if the farmer could not comply with the rental and repurchase provisions (§ 75(s)(3)). In short, under the Frazier-Lemke Act, a farmer could not be

*forced* to liquidate against his will. If a composition or extension proposal could not be confirmed, and the farmer did not *agree* to allow liquidation or the future possibility of liquidation, the case was dismissed.

Thus, during the Great Depression, Congress expressed its clear intent that farmers in a composition or extension could not be liquidated against their will.

### 3. Chapter XII

Under Chapter XII of the Act, a proceeding could be instituted only by a voluntary petition. See former Bankr.R. 12–13(a)(1); 9 Collier on Bankruptcy ¶ 4.04 (14th Ed. 1978).

> But after the debtor has filed his voluntary Chapter XII petition, a plan may be proposed in the case by a creditor under the conditions prescribed in Rule 12–36(b).

9 Collier, supra ¶ 9.01, at 1110 (14th Ed. 1978). See also Section 466 of chapter XII (former 11 U.S.C. § 866). A chapter XII arrangement could provide for "the sale or transfer of all or any part of his [the debtor's] property ...." Section 461(12) (former 11 U.S.C. § 861(12). See Anderson & Ziegler, Real Property Arrangements Under the Old and New Bankruptcy Act, 25 Loyola L.Rev. 660, 675 (1979). Chapter XII was available for farmers although the Court was able to find reported only one such farm arrangement. See *In re Benson,* 9 B.R. 854, 24 CBC 213 (Bkrtcy.N.D. Ill.1981). Additionally, only a few creditor plans were reported under chapter XII. See, e.g., *In re Hamburger,* 117 F.2d 932, 934 (6th Cir.1941), cert. denied 313 U.S. 572, 61 S.Ct. 959, 85 L.Ed. 1529 (1941); *In re Spicewood Assocs.,* 445 F.Supp. 564, 569 (N.D.Ill.1977); *In re Flushing Mall Co.,* 7 B.R. 277 (Bkrtcy.S.D.N.Y.1980); *In re Yorktown Assocs.,* 3 BCD 1317 (Bkrtcy.S. D.N.Y.1978). These cases lend no guidance to the issue at bar. The only conclusion that can be drawn is that in no reported case did a creditor attempt to file a liquidating plan against a farmer in chapter XII.

### 4. Statutory Construction

The argument is made that since the Code does not say a liquidating plan cannot be confirmed over the chapter 11 farmer debtor's objection, then it must be permitted. The Court cannot agree. There are some things that even though not specifically prohibited, are nonetheless *not* proper and *not* permissible. In *H.D. Still's Sons v. American Nat. Bank,* 209 F. 749 (7th Cir.1913), a partnership engaged in farming was the subject of an involuntary bankruptcy petition, and the circuit court was asked by the petitioning creditors to rule that since section 5a of the Act did not say farm partnerships could not be the subject of an involuntary petition, then such involuntary petitions were permissible. The Court rejected the argument and stated:

> It seems to us hardly reasonable to suppose that the Congress, which was careful to exempt from liability to involuntary bankruptcy ... tillers of the soil, nevertheless intended that the exemption should not apply when two or more of those persons were associated as partners .... [S]uch an intention ... does [not] find support ... in consideration of public policy.

Id. at 753.

■ Furthermore, the Code is to be liberally construed to give the debtor the full measure of relief afforded by Congress. Ambiguities are to be resolved in favor of the debtor. *Wright v. Union Central Life Ins. Co. (Wright II),* 311 U.S. supra at 278–79, 61 S.Ct. at 199–200; *In re Mahaffey,* 129 F.2d 292 (2d Cir.1942). In examining the Code, Congress prohibited the involuntary liquidation of farmers in chapter 7 (see § 303(a)), in chapter 13 through conversion prohibition, (see § 1307(e)), and in chapter 11 also through conversion prohibition, (see § 1112(c)), and filing prohibition, (see § 303(a)). Just as it seemed unreasonable to the seventh circuit in 1913, so it seems unreasonable to this Court that in 1978, Congress decided to prohibit involuntary liquidation of farmers in bankruptcy except if the farmer files a chapter 11 petition and does not file a plan within the

first 4 months. This seems to be in contravention of Congress' long standing intent prohibiting involuntary liquidations of farmers; public policy protecting American farmers from federally sanctioned involuntary liquidations, and is diametrically opposed to the system that existed under the Frazier-Lemke Act in which only the farmer could permit liquidation. The relief afforded a farm debtor by Congress is the opportunity to be free of involuntary liquidations. To hold that the farmer can be involuntarily liquidated against his will in chapter 11 would ignore the direction of *Wright II* by failing to construe the Code in the favor of the farm debtor, and it would permit a creditor to do indirectly that which Congress prohibited them from doing directly.

■ The Court finds specific statutory support for holding against an involuntary liquidating plan in 11 U.S.C. § 1129. Section 1129(a)(1 & 3) requires compliance with the provisions of chapter 11 and require the plan to be filed in good faith and not by means forbidden by law. The Court believes that, upon objection by the farmer, a liquidating plan does not comply with chapter 11 and those provisions of chapter 3 incorporated in chapter 11 because the liquidating plan purports to do that which the creditor could not otherwise do pursuant to § 303(a) and § 1112(c).

Pursuant to § 1141(d)(1), (3), an individual in a chapter 11 liquidation receives the same discharge as a chapter 7 debtor. A non-individual in a chapter 11 liquidation is denied a discharge pursuant to § 1141(d)(3)(C) in the same manner as the chapter 7 non-individual debtor. Thus, in substance, there is no difference between the effect of a chapter 7 liquidation and a chapter 11 liquidation. The Court does not believe § 1129(a)(1) is satisfied by elevating form over substance.

Furthermore, the tenth circuit has defined "good faith" as requiring an inquiry into whether a chapter 13 plan abuses the provisions, purpose or spirit of chapter 13. *In re Flygare*, 709 F.2d 1344, 1347 (10th Cir.1983). This is equally applicable to chapter 11. The Court holds that upon objection, a creditor's liquidating chapter 11 plan abuses the provisions, purposes and spirit of chapter 11 and the Bankruptcy Code which do now and since 1898 always have prohibited liquidation of farmers without the farmer's consent. The Court agrees that a liquidating plan can be filed by a creditor pursuant to §§ 1121, 1123; but, upon objection by the debtor, the plan cannot be confirmed pursuant to § 1129. The farm debtor can, however, consent to a partial or total plan of liquidation, as was provided in Act § 75(s) and thus a creditor who proposes such a plan may obtain confirmation.

### 5. Code Case Law

There are several cases under the Code law bearing on the issue at bar. In *In re Blanton Smith Corp.*, 7 B.R. 410 (Bkrtcy. M.D.Tenn.1980), the Court *held* that a creditor could not compel liquidation of a farmer in chapter 11. Id. at 414. In *In re Mandalay Shores Coop. Housing Assoc.*, 22 B.R. 202 (Bkrtcy.M.D.Fla.1982), Judge Paskay suggested in dicta that a trustee could be appointed for a chapter 11 non-profit organization debtor (also immune from conversion to a chapter 7 and involuntary chapter 7 or 11 petitions), and the trustee *"may propose* a plan of liquidation and *if* the plan is confirmed ...," proceed to liquidate the estate. Id. at 204 (emphasis added). Judge Paskay at no time stated that the hypothetical trustee's liquidation plan *could* be confirmed over the non-profit debtor's objection. In fact, an examination of the facts in *Mandalay Shores Coop.* reveals that the case was in a dead-locked position, because controversies existed between feuding factions of coop members. It can be inferred that appointment of a trustee might be agreeable to all parties in interest as the only means to move the case off dead center. To cite *Mandalay Shores Coop.* for the proposition that a non-profit organization can be liquidated against its will in chapter 11 is incorrect.

In *In re Curlew Valley Assocs.*, 14 B.R. 506 (Bkrtcy.D. Utah 1981), a chapter 11

trustee of an agribusiness apparently began preparing for liquidation of the debtor and proposed to shift the business operation from hay baling to hay cubing. The debtor argued that,

> the trustee, in effect, was placing the estate in a liquidating posture which would violate the spirit if not the letter of Section 1112(c).

14 B.R. at 508, n. 2. The Court specifically stated the trustee was not liquidating the estate. Id. The Court did not validate a liquidating plan, nor rule on the liquidating plan already filed by the creditors. Id. at 509, n. 5. This Court cannot view *Curlew Valley Assocs.* as approval by Judge Mabey of liquidating plans over the objection of the chapter 11 farm-debtor.

Finally, in *In re Cassidy Land & Cattle Co., Inc.,* Case No. 82–1257 (D.Neb.1984), in an unpublished district court opinion, *In re Tinsley,* 36 B.R. 807 (Bkrtcy.W.D.Ky. 1984), and *In re Jasik,* 727 F.2d 1379 (5th Cir.1984), a creditor's liquidating plan was approved over the objection of a chapter 11 farm debtor. *Cassidy Land & Cattle Co., Inc.* apparently has been appealed to the eighth circuit. This Court cannot agree with the reasoning of these cases. This Court disagrees with the *Cassidy* court's characterization of the *Blanton Smith* holding as "implied." See *Cassidy* Slip Op. at pg. 8. This Court disagrees with the use of *Mandalay Shores Coop.* as authority validating liquidating plans. Furthermore, these three cases do not address the historical treatment accorded farmers including the Frazier-Lemke Act, and in this Court's opinion fail to construe the provisions of the Code liberally and resolve ambiguities in favor of the farmer/debtor as required in *Wright II,* supra. Neither do they announce any reason for their holdings other than an implied waiver by the farmer.

*Cassidy Land & Cattle Co.* states that:
> [A] farmer who voluntarily seeks protection under the Bankruptcy Act [sic] by filing a petition in Chapter XI [sic] assumes the risk that a creditor will propose a liquidating Chapter XI [sic] plan.

Slip Op. at 7. Accord *In re Tinsley,* 36 B.R. at 809; *Jasik,* 727 F.2d at 1382. The Court cannot agree. The creditor's remedy in a farm reorganization is dismissal pursuant to § 1112. Dismissal was the farmer's risk under former § 75 if the farmer did not consent to possible liquidation under § 75(s). This has not changed under the Code.

The Court believes the creditor's inability to file a liquidating plan is relevant to certain subsections of § 1112(b) relating to dismissal, such as continuing loss, § 1112(b)(1), evidence of inability to effectuate a plan, § 1112(b)(2), and unreasonable delay, § 1112(b)(3). The Court believes that uncomplicated farm reorganizations should not sit dormant without a plan for extended periods of time, and that many could have plans and disclosure statements submitted within 4 to 6 months. The Court does not view delay by the farm-debtor as an ultimately beneficial strategy if confirmation of a viable plan is the sincere goal of the chapter 11 petition. The Court, however, does not believe the farmer assumes the risk and somehow waives his bankruptcy exemption from involuntary liquidation and his state granted redemption rights by filing a chapter 11 petition. *Cassidy Land & Cattle Co., Tinsley* and *Jasik* cite no authority for this conclusion. And without authority, this conclusion is contrary to the direction of the Supreme Court to construe the Code in favor of the farm debtor.

### 6. Summary

The Court holds that a creditor's plan of liquidation cannot be confirmed over the objection of a chapter 11 farm debtor. The farm creditor's remedy is dismissal, not liquidation.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.