### GREGG et al. v. MITCHELL et al.

(Circuit Court of Appeals, Sixth Circuit. January 20, 1909.)

No. 1.832.

1. BANKRUPTCY (§ 68*) — INVOLUNTARY PROCEEDINGS — PERSONS WHO MAY BE ADJUDGED BANKRUPT—FARMERS—"ENGAGED PRINCIPALLY IN FARMING."

A farmer does not cease to be "engaged principally in farming," within the meaning of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), because he establishes a dairy as one of the branches of his industry, to utilize the products of his farm and convert them to profitable uses, nor because he may sell the products of his dairy at retail.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 68.*

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

2. BANKRUPTCY (§ 68*) — INVOLUNTARY PROCEEDINGS — PERSONS WHO MAY BE ADJUDGED BANKRUPT—FARMERS—"ENGAGED PRINCIPALLY IN FARMING."

An alleged bankrupt had for many years lived upon and carried on a large farm, amounting, together with some leased land, to 1,700 acres, which was devoted to cultivation and grazing. Among other live stock he kept about 100 cows, which were maintained on the products of the farm, except that he sometimes bought and fed malt from breweries. The milk from such cows he sold in a city some miles distant, for a time from his own wagons, and afterwards by means of a large refrigerator, in which he stored the milk and employed men to retail it. The value of the yearly products of his farm, outside of the dairy business, was about $17,500, and of his dairy not more than $10,000. Held, that he was "engaged principally in farming," within the meaning of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), and was not subject to proceedings in involuntary bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 68.*]

Appeal from the District Court of the United States for the Southern District of Ohio.

T. J. Keating and M. S. Murray, for appellants.
J. H. Dyer, for appellees.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

SEVERENS, Circuit Judge. On March 12, 1907, certain creditors of Henry C. Wilson filed a petition in the District Court, praying that he be adjudged a bankrupt upon the allegations contained in said peti-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion, among which was one averring that he was "by occupation a trader, grain and feed merchant, and dairyman," "and is neither a wage-earner nor a person engaged principally in farming or the tillage of the soil." In his answer Wilson denied this allegation, and said that:

"He avers the truth to be that he is a person engaged chiefly in farming and the tillage of the soil, and has been so engaged for many years next preceding the time of filing the petition herein. and that he should not be declared a bankrupt for any cause in said petition alleged."

But he was nevertheless adjudged bankrupt upon the proof produced before the referee and a review thereof of the Ditsrict Judge, and·he has appealed from the adjudication. Both sides agree "that the sole question for adjudication here, as in the court below, is: Was Henry C. Wilson, in the month of February, 1907, and prior thereto, a person chiefly engaged in farming?" And we agree that this is a question of fact, and we also agree to the statement of the rule quoted by counsel for appellees as substantially correct, as follows:

"Where the trial court has considered conflicting evidence and made its finding and decree thereon, it will be taken as presumptively correct, and will not be disturbed on appeal unless an obvious error has occurred in the application of the law, or a serious and important mistake has been made in the consideration of the evidence."

But we are constrained to hold that the case before us falls within the proviso. There was no material conflict in the testimony. Wilson had lived for many years on a large farm owned by him near a village 14 miles west of Columbus, and for as many as five years previous to these proceedings, he had been occupying that farm and other farming lands belonging to his mother and sister, and leased by him from them. The whole amounted to some 1,700 acres. He had some other small parcels which he leased to others on shares. These 1,700 acres were improved land, which he devoted to cultivation and grazing. He had and used thereon about 20 horses, and an equipment of farming tools, wagons, and machinery in quantity corresponding to his operations, and employed from 7 to 15 men; and he supervised and controlled all the operations of raising the ordinary crops of agriculture. He had a large number of cattle and hogs, and during the preceding year raised 80 calves, and he kept about 100 cows. This live stock was maintained upon the crops which he raised. But·at times he bought malt from breweries for his cows. The crops not so used were sold. He kept the cows principally for their milk, which he sent by his wagons to Columbus, where it was sold part of the time on the street at retail, and afterwards he provided a large refrigerator at Columbus, in which he stored his milk and employed men to retail it. Sometimes he bought· milk from others and mingled it with his own. He built silos on his farm, and used them for storing and preserving forage raised on it, which he fed to his cows and other stock, and sometimes he bought stock from others, which he fattened on the grain and other produce from the farm, and then sold it off.

The foregoing are samples of his business operations. To enumer-- ate all the details of it would require the statement of the particulars of the operations of diversified farming on a large farm. The only exception to this that we can see is his buying of milk from other parties and selling it. This was a comparatively small matter, and bore no considerable proportion to his other business. From the best information that we can get, we judge that the total value of the yearly products of his farm, other than from his dairy business, was about $17,500, and from that not more than $10,000. He had no other oc- cupation than that of farming, unless it be that his keeping a dairy was another occupation. The court below thought that he was more of a dairyman than a farmer. We should think otherwise, even if all he did in carrying on the dairy business was to count as a distinct business from farming.

But it seems to us that the court took an overnice distinction be- tween the business of operating a farm and carrying on a dairy. In the vast majority of cases the keeping of a dairy is a mere incident, or, at most, a branch, of farming business; and in such cases it is a misdescription to classify the man as a dairyman, and not as a farmer. The general name of the latter includes the former. It is well known that all over the country farmers from time to time are changing their lines of industry, the uses to which they put their lands, and give their attention, sometimes principally to raising grains, sometimes to grazing, sometimes to the production of milk, butter, and cheese, all according to their judgment as to what is the most profitable way of using their farms.

Doubtless a man might be a dairyman, and not be a farmer, as if he were to build a barn, buy a herd of cows, and buy from others the grain and other forage to feed them, and sell their milk or other prod- uce; and if this was his principal business he would not be exempt from proceedings in bankruptcy because he was a farmer. But if, while farming, he establishes, as one of the departments of his in- dustry, a dairy to utilize the products of his farm and convert them to profitable uses, he is none the less a farmer; nor does he cease to be one until he reaches the end by disposing of the ultimate product. His farming business includes all this. He may sell it at wholesale or at retail, as he finds to his best advantage. We do not think that, in storing his milk and selling it at retail, as he did, or if he sold his other products of his farm at retail, he was out of his legitimate sphere as a farmer. He did this, we must suppose, because it was the most profitable way of disposing of his products. We know of no reason for putting a strained construction upon this provision of the act, or restricting it within narrower bounds than the language im- ports when read in its common meaning. It exempts a certain class of persons, those engaged principally in a certain business, and that business is one which is not restricted to the simple raising of crops or other common products of farms, but extends to the results of turning them to account.

These views we think are in accord with the general trend of de- cisions. In re Thompson (D. C.) 102 Fed. 287; In re Mackey (D.

C.) 110 Fed. 335; Bank v. Matney (D. C.) 132 Fed. 75; In re Drake (D. C.) 114 Fed. 229, and in Circuit Court of Appeals sub nom. Wulbern v. Drake, 120 Fed. 493, 56 C. C. A. 643; In re Hoy (D. C.) 137 Fed. 175; Rise v. Bordner (D. C.) 140 Fed. 566; Flickinger v. Bank, 145 Fed. 162, 76 C. C. A. 132.

Certain cases are cited to support views slightly different. But no one of them goes so far from the lines we think correct as to sanction the order here appealed from. We add, however, that if it were conceded that, in respect of the dairy business, Wilson was not engaged in farming, still the fact remains that he was principally engaged in farming.

The order must be reversed, with costs.