In re DWYER.

ROBERTSON et al. v. DWYER.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1911.)

No. 1,705.

BANKRUPTCY (§ 68*)—ADJUDICATION—PERSONS LIABLE—"FARMING."

　　Defendant, during the two years preceding the filing of a bankruptcy petition against him, owned a farm, on which he fed a large number of cattle and hogs for market. He had 46 acres cultivated in corn and oats on equal shares, and the balance of his land, about 110 acres, was in grass and feeding lots. He rented 15 acres, on which he raised corn. He received about 2,000 bushels a year from his own and the rented land, and in addition bought about 8,400 bushels to feed. A large proportion of the cattle were purchased and brought to the farm, while almost all of the hogs were born and raised there. His fat cattle and hogs he would sometimes sell to drovers, and sometimes ship in car load lots to market; but he never bought cattle as a drover or stock dealer, with the expectation of making a profit out of his ability to bargain or his knowledge of market conditions. *Held,* that defendant was engaged chiefly in farming or the tillage of the soil, and was, therefore, not subject to adjudication as a bankrupt; the word "tillage," as used in the expression "chiefly engaged in farming or the tillage of the soil," not being a statutory definition of "farming," tillage being a part of "farming," but not being coextensive with the whole thereof.

　　[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 68.*

　　For other definitions, see Words and Phrases, vol. 3, p. 2700; vol. 8, p. 7661.]

　　[What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

Appeal from the District Court of the United States for the Southern District of Illinois.

In the matter of bankruptcy proceedings against Timothy C. Dwyer. An involuntary petition having been filed by W. W. Robertson and others, and a master's report in favor of an adjudication having been disallowed, as contrary to the evidence, and the petition dismissed, petitioners appeal. Affirmed.

W. N. Hairgrove (J. J. Neiger, of counsel), for appellants.
John A. Bellatti and Albert Salzenstein, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. Appellants filed a petition to have appellee adjudged a bankrupt as a person "engaged in the business of dealing in stock." He filed a plea that he was not within the act because he was and for more than 20 years last past had been "a farmer and engaged chiefly in farming and the tillage of the soil." The issue was referred to a special master "to take the testimony and report the same with his conclusions thereon to the court." The master's conclusion was that appellee was not chiefly engaged in farming or the tillage of the soil. The court found that the master's conclusion was "contrary to the law and the evidence," and dismissed the petition.

In the expression "chiefly engaged in farming or the tillage of the soil," tillage of the soil does not stand as a statutory definition of farming. Tillage is a part of farming, but is not coextensive with the whole of farming.

The facts respecting appellee's occupation were these: He was born and brought up on a farm. Up to the last two or three years before the filing of the petition, the evidence shows him nothing more than a tiller of the soil. For about seven years preceding the filing of the petition he owned and dwelt upon 160 acres of land in Morgan county, Ill. Besides this he owned 120 acres of land in Wayne county until June, 1907, when he sold it, and bought 360 acres in Missouri, which he sold about six months before the petition was filed. His relation to the Wayne county and Missouri lands was unobjectionable to appellants. Of the Morgan county land, during the last two years, he had 46 acres cultivated in corn and oats on equal shares. The balance was in grass and feeding lots, about 110 acres being in grass. During this time he rented from a neighbor 15 acres, on which he raised corn. He received about 2,000 bushels a year from his own and the rented land, and in addition bought about 8,400 bushels a year to feed to cattle and hogs on his farm. A very high proportion of the cattle were purchased and brought to the farm. Almost all of the hogs were born and raised on the farm. When he had fat cattle or hogs, he would sometimes sell them to drovers and sometimes ship them in car load lots to Chicago. The fact that he bought four times as much grain as he raised for feeding stock seems to have led the master to the conclusion that appellee was chiefly engaged as a dealer in live stock. But he never bought cattle as the drover or ordinary stock dealer buys them, with the expectation of making something out of his ability to bargain and his knowledge of market conditions, with the expectation of selling at an advanced price the very thing he bought. "Every steer I ever bought I brought home and fed from

184 F.—56

three months to six months on my place." Instead of being a "dealer," appellee was something like a manufacturer, who takes raw materials ("feeders") and converts them into finished product ("fat beef cattle"). As a rule appellee had not more than 60 head of cattle on his farm at a time. In addition to corn, they had grass and hay. In addition to feed, they had prolonged care and attention. Because the grain land was of less extent than the pasture and grass land, it seems to be urged that his farm was "a mere feeding station." Bank v. Matney (D. C.) 132 Fed. 75. But at a mere feeding station one would not need to care whether the footing was sand, or plank, or good rich soil. During the first three years that appellee lived on this farm, and while he was taking grain out of the land and putting nothing back in, the soil was thin and worn, and he did not raise crops enough to pay the interest on the mortgage. In putting "feeders" on the land, one of his purposes (born of the necessity of getting enough from the use of the land to pay the interest) was to rest the soil and restore its fertility. If he could properly buy tons of fertilizers to mix with worn-out soil, we think he could properly buy corn to supplement the pasture and grass (about two acres to each head of cattle) and the corn raised on the tilled land.

We deem it unnecessary to review the facts further. We have read the evidence and examined the cases cited; and we rest our decision on the conclusion that conducting a "stock farm," as well as conducting a "grain farm," is farming, and that appellee was chiefly (if not solely) engaged in farming.

The decree is affirmed.