### KING v. OHIO VALLEY TRUST CO. et al.

(Circuit Court of Appeals, Sixth Circuit. February 6, 1923.)

#### No. 3771.

Bankruptcy ☞68—Alleged bankrupt held person "engaged chiefly in farming."

A farmer owning 700 acres of land, farmed by himself and by tenants on shares in 1921, in November became owner of a gristmill, which he operated until the following March, chiefly in grinding corn from his own farms. *Held*, that such operation did not change his status as a farmer, and that he was not subject to involuntary proceedings in bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Farming.]

Appeal from the District Court of the United States for Western District of Kentucky; Walter Evans, Judge.

Petition in involuntary bankruptcy was filed against William A. King by the Ohio Valley Trust Company and others, creditors. From the adjudication, King appeals. Reversed and remanded.

L. B. Alexander and C. C. Grassham, both of Paducah, Ky., for appellant.

Arthur Y. Martin, of Paducah, Ky., for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The question presented by this appeal is whether, at the date of the alleged act of bankruptcy, King was so engaged "chiefly in farming or tilling of the soil" as to forbid the adjudication in bankruptcy from which he appeals. The act of bank-

---

[1] White v. Ewing, 159 U. S. 36, 39, 15 Sup. Ct. 1018, 40 L. Ed. 67; Peck v. Elliott (C. C. A. 6) 79 Fed. 10–12, 24 C. C. A. 425, 38 L. R. A. 616; Kiskadden v. Steinle (C. C. A. 6) 203 Fed. 375, 121 C. C. A. 559; Courtney v. Croxton (C. C. A. 6) 239 Fed. 247, 152 C. C. A. 235; Durand v. Brown (C. C. A. 6) 236 Fed. 609, 149 C. C. A. 605; Hollander v. Heaslip (C. C. A. 5) 222 Fed. 808, 811, 137 C. C. A. 1.

ruptcy was the making of a deed of general assignment on March 29, 1922. At that time he was the owner of several farms, or tracts of farming land, including about 700 acres in two different counties, representing investments therein by him of not less than $60,000. He also owned a gristmill in a small village, which mill had cost him $3,-000 or $4,000, and which he was operating.

Until March, 1917, he had been nothing but a farmer, managing 300 acres of land in Carlisle county. At the time he purchased the gristmill, moved his residence to the village, and continued to and through the 1921 season the operation of his Carlisle county farms, through tenants, upon shares, but exercising a substantial and continuous supervision. He operated the gristmill until September, 1919, and it might, for the purposes of the case, be conceded that, until that time, during 1917, 1918, and 1919, he was not chiefly engaged in farming. Then he sold the mill and had nothing more to do with it, and had no occupation except farming until November, 1921. During this period he acquired 350 acres of additional farming land, in several tracts within easy reach of his residence, some of which tracts he operated, not by tenants, but personally, and the rented tracts being mostly worked upon shares, under his direction. His farming operations included the raising and feeding of a considerable or large amount of stock.

On November 9, 1921, the purchaser of the mill had defaulted and King took it back. This was after the farming season of 1921 was substantially over, and the deed of assignment was made before the next farming season was fairly under way. In this interval he operated the gristmill, but the evidence is undisputed that it was used only for grinding corn, and that 90 per cent. of what he ground was composed of his own 4,000 bushels of corn coming from his farms; that he bought corn for grinding only incidentally, and when the roads were too bad to permit hauling his own; that he ground his corn because he could sell it more profitably in that form; and that the hay and tobacco he sold at the mill came from his own farms. There was also a grocery connected with the mill, but the business of the grocery was so trifling as to be negligible. The stock of groceries amounted to $200, and the sale income was not $2 a week.

Excepting for inferences which might be drawn from these undisputed facts, the petitioning creditors in bankruptcy had nothing to challenge his status as a farmer, except the claim that their debts arose from sales to him as if to a merchant; but there is only one witness who testifies to any considerable sale to him after November, 1921, and this was for feedstuffs. King testifies that substantially all such feedstuffs purchased by him were used by him as a farmer in feeding his stock.

Under these facts, we think there was no room for any inference, except that King was chiefly engaged in farming. He was active rather than retired. His main indebtedness did not arise out of any other business. His chief occupation did not change with the seasons. Gregg v. Mitchell (C. C. A. 6) 166 Fed. 725, 92 C. C. A. 415, 20 L. R. A. (N. S.) 148, 16 Ann. Cas. 510; In re Dwyer (C. C. A. 7) 184 Fed. 880, 107 C. C. A. 204; Counts v. Columbus Buggy Co. (C.

C. A. 4) 210 Fed. 748, 127 C. C. A. 298; In re Brown (C. C. A. 9) 253 Fed. 357, 165 C. C. A. 139.

Accordingly the adjudication in bankruptcy is reversed, and the case remanded, with directions to dismiss the petition.