**In re The BLANTON SMITH CORPORATION, d/b/a Greenbrier Egg Farms, Greenbrier Feed Mill, and The Blanton Smith Hatcheries,**

**and**

**In re GRUBBS FARMS, INC., Debtors.**

**Bkrtcy. Nos. 380–01019, 380–01020.**

United States Bankruptcy Court,
M. D. Tennessee.

Nov. 26, 1980.

Robert P. Ziegler, John E. Buffaloe, Jr., Nashville, Tenn., for debtors.

John H. Bailey, III, Nashville, Tenn., for Springfield Production Credit Ass'n.

B. Gail Reese, Nashville, Tenn., for Grubbs Family.

Clyde W. Richert, III, Springfield, Tenn., Edwin S. Pyle, Nashville, Tenn., for the Farmer Co–operator Group.

C. Kinian Cosner, Jr., Nashville, Tenn., for Unsecured Creditors Committee.

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

### MEMORANDUM

This matter is before the court upon applications filed by the debtors' major secured creditors to liquidate the debtors either by converting these chapter 11 cases to chapter 7 cases or by appointing a liquidating trustee. The creditors also seek alternative relief in the form either of dismissing the cases or, if they continue under chapter 11, of providing them with adequate protection.

A hearing was held on November 19, 1980. At the conclusion of the hearing, the court indicated that it would first address the issue of whether the creditors were entitled to liquidate either or both of the debtors, which appeared to depend upon whether either or both of the debtors are "farmers" for purposes of the Bankruptcy Reform Act of 1978. A further hearing was scheduled for December 1, 1980, on the alternative relief sought.

Section 1112(c) of the Bankruptcy Reform Act of 1978 prohibits the court from converting a case under Chapter 11 to a case under chapter 7 if the debtor is a farmer. This provision continues a similar provision in Rule 11–42(e) of the Federal Rules of Bankruptcy Procedure. Section 303(a), continuing the law as it existed under the prior Act, prohibits the filing of an involuntary petition against a farmer. Section 101(17) defines "farmer" as a

person that received more than 80 percent of such person's gross income during

the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

Section 101(30) defines "person" as including "individual, partnership, and corporation." Section 101(18) defines "farming operation" to include

farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state.

Under § 1(17) of the Bankruptcy Act of 1898, as amended, "farmer" was defined as

an individual personally engaged in farming or tillage of the soil, and shall include an individual personally engaged in dairy farming or in the production of poultry, livestock, or poultry or livestock products in their unmanufactured state, if the principal part of his income is derived from any one or more of such operations.

11 U.S.C. § 1(17) (1976). Under the case law interpreting § 4(b) of the prior Act, which prohibited the filing of an involuntary petition against a farmer, the courts distinguished between the actual production of poultry, livestock, or poultry or livestock products and the processing or marketing of poultry, livestock, and the products thereof. *See In re Schoenburg,* 279 F.2d 806 (5th Cir. 1960); *Gregg v. Mitchell,* 166 F. 725 (6th Cir. 1909); *In re Disney,* 219 F. 294 (D.Md. 1915); *Bank of Dearborn v. Matney,* 132 F. 75 (W.D.Mo.1904); *see also Schuster v. Ohio Farmers' Co-op Milk Ass'n,* 61 F.2d 337 (6th Cir. 1932); *King v. Ohio Valley Trust Co.,* 286 F. 928 (6th Cir. 1923). In *Gregg v. Mitchell, supra,* the Sixth Circuit found that an individual who used the products of his farm to feed milk cows and sold their milk and other dairy products was a farmer protected by § 4(b). The court concluded,

We do not think that, in storing *his* milk and selling it at retail, as he [the debtor] did, or if he sold *his* other products of *his* farm at retail, he was out of his legitimate sphere as a farmer.

166 F. at 727 (emphasis supplied). The court enumerated among the debtor's "business operations," however, the debtor's "buying of milk from other parties and selling it." 166 F. at 727.

The debtor Blanton Smith Corporation is a corporation whose entire gross income during the taxable year preceding the filing was derived from the processing, packaging, and marketing of eggs. That debtor owns all of the laying birds, which are located on approximately thirty or forty farms throughout Robertson County, Tennessee, including the debtor Grubbs Farms, Inc., which is a wholly owned subsidiary of the Blanton Smith Corporation. The birds are cared for by the farmers who house them, but the Blanton Smith Corporation provides the food, supplies, and medication for the birds and collects and markets the eggs produced. Between twenty-five and thirty percent of the facilities in which the birds are housed are located on Grubbs Farms and thus are indirectly owned by the Blanton Smith Corporation. The definition of "farmer" under § 101(17) is in terms of income derived from a farming operation that is owned or operated by the person whose status as a farmer is at issue. The court is of the view that the debtor cannot be denied the status of a farmer under § 101(17) merely because it owns rather than operates the farming operation from which its income is derived.

The debtor's major secured creditors, however, seek to characterize the debtor as a corporate agribusiness whose income is attributable to a commercial operation rather than as a farmer whose income is derived from a farming operation. A resolution of this issue requires a review of the legislative history of § 101(17).

The bankruptcy statute proposed in 1973 by the Commission on the Bankruptcy Laws of the United States provided that any person eligible to file a voluntary petition, except "an individual who earns more than half of his gross income from farming," was to be subject to an involuntary petition. H.R. Doc. No. 93–137, 93d Cong., 1st Sess., pt. II at 74 (1973). The note accompanying

this provision made clear that the exclusion referred only to "[i]ndividual farmers" and that the term "earns" was meant "to connote that the income must be from the individual's personal efforts, not from lease or rental." *Id.* In the commentary accompanying the proposed statute, the drafters referred to the purpose for the provision:

This exception is maintained for several reasons: first, the existing exception is an effective exception and has deep roots in history; and second, the irregular nature and the potential ups and downs of a farmer's income would require a different test for an involuntary petition against a farmer, the complexity of which does not appear warranted in light of the lack of any request for any change in the law and the absence of any abuses having come to the attention of the Commission.

H.R. Doc. No. 93–137, 93d Cong., 1st Sess., pt. I at 224 (1973).

The Bankruptcy Reform Act of 1978 was initially introduced in the House of Representatives as H.R. 8200 in 1977. As reported by the House Judiciary Committee, H.R. 8200 contained as § 101(17) the following definition of "farmer":

"farmer" means person that received more than 75 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person that had gross income of less than $275,000 during the taxable year of such farming operation immediately preceding the taxable year of such farming operation during which the case under this title concerning such person was commenced;
. . . .

H.R. 8200 did not include any definition for "farming operation." Section 101(29) of H.R. 8200 provided that "person" included "individual, partnership, and corporation." H.R. 8200, 95th Cong., 1st Sess. § 101(29) (1977); H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 313 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5963, 6270.

The House Report that accompanied H.R. 8200 contained the following discussion relating to the definition of "farmer":

The definition of farmer in paragraph (17) is derived from the Small Business Act. It encompasses only small farmers, and is not intended to cover agribusiness. The purpose of the definition is for use in the sections of the proposed bankruptcy code prohibiting involuntary cases against farmers. The limits contained in the definition are a 75 percent minimum on income from farming operations and a $275,000 maximum gross income in the year before the filing of the petition.

H.R. Rep. No. 95–595, *supra*, at 311, U.S. Code Cong. & Admin. News 1978, p. 6268.

The Senate amendment in the nature of a substitute to H.R. 8200 deleted the $275,000 income limitation and changed "farming operation" to "farming or ranching operation." S. 2266, 95th Cong., 2d Sess. § 101(18) (1978). The Senate Report that accompanied the Senate amendment contained the following discussion relating to the definition of "farmer":

Paragraph (18) defines "farmer". It encompasses only those persons for whom farming operations contribute 75 percent or more of their total income.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 24 (1978), U.S. Code Cong. & Admin. News 1978, p. 5810.

In the compromise bill offered on September 28, 1978, as a House amendment to the Senate amendment in the nature of a substitute to H.R. 8200, the percentage of income required under both the House and Senate versions of the definition of "farmer" was increased from 75 percent to 80 percent. 124 Cong.Rec. S17,406 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); *id.* at H11,090 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards). The compromise bill also contained a new definition of "farming operation" that had not been included in either of the previous versions and that was intended to give "a broad construction to the term 'farming operation.' " *Id.* at S17,406–07, H11,090. The term "person" as it initially appeared in H.R. 8200

**414**

remained unchanged. *See id.* at S17,406–07, H11,090; S.Rep. No. 95–989, *supra,* at 25, U.S. Code Cong. & Admin. News 1978, p. 5811.

■ When relying upon the legislative history of the Bankruptcy Reform Act to aid in the interpretation of its provisions, courts should "begin with the most recent statement of authority and delve backward through the legislative process." Klee, *Legislative History of the New Bankruptcy Code,* 54 Am.Bankr.L.J. 275, 294 (1980). The latest statements of authority upon the definitions of "farmer" and "farming operation" are the floor statements by Sen. De-Concini and Rep. Edwards relating to the compromise bill, both of which indicate that the term "farming operation" was intended to be given a "broad interpretation." 124 Cong.Rec., *supra,* at S17,406–07, H11,090. Implicit in the inclusion of a definition of "farming operation" for the first time in the compromise bill is the abandonment by the Congress of its stated intention in the House Report of a year earlier that the term "farmer" was to be given a narrow construction to include only small farmers and not agribusiness. The implication becomes stronger in the light of the Senate's deletion of the $275,000 income limitation that originally occurred in H.R. 8200 and of the compromise bill's failure to restore such a limitation. *See* 3 Bankruptcy Code 16 (Collier pamph. ed. 1979).

Even prior to subsequent legislative developments, the House Report commentary upon § 101(17) as it originally appeared in H.R. 8200 was apparently incompatible with the definition of "farmer" as a "person," which, under § 101(29) of H.R. 8200, included partnerships and corporations as well as individuals. This definition of a "farmer" was substantially different from that under the prior Act, which defined "farmer" as "an individual personally engaged in farming or tillage of the soil." Although the cases extended the definition under the old

Act to apply to partnerships, *see, e. g.,* H. D. Still's Sons v. American Nat'l Bank, 209 F. 749 (4th Cir. 1913), *cert. denied,* 232 U.S. 723, 34 S.Ct. 331, 58 L.Ed. 815 (1914), it was clear that the definition did not apply to corporations.[1] 1 Collier, Bankruptcy ¶ 4.15[5] (14th ed. 1974). Likewise, the definition of "farmer" under H.R. 8200 in terms of income derived from a farming operation "owned or operated" by such a person represented a departure from the law under the prior Act, which required that an individual seeking characterization as a farmer be *personally* engaged in farming of tillage of the soil. It was well settled under the old Act that one who owned a farm and leased it to a tenant was not a "farmer" within the meaning of the term when the owner did not personally participate in the cultivation or operation of the farm but merely received the rent therefrom. 1 Collier, Bankruptcy ¶ 4.15[2.1] (14th ed. 1974); *see Beamesderfer v. First Nat'l Bank & Trust Co.,* 91 F.2d 491 (3d Cir.), *cert. denied,* 302 U.S. 686, 58 S.Ct. 35, 82 L.Ed. 530 (1937); *First Nat'l Bank & Trust v. Beach,* 86 F.2d 88 (2d Cir. 1936), *aff'd,* 301 U.S. 435, 57 S.Ct. 801, 81 L.Ed. 1206 (1937).

■ The court finds implicit in the legislative history of § 101(17), therefore, an intention by the Congress to expand the definition of "farmer" to the extent contemplated by the term "person," *i. e.,* to include within the definition of "farmer" a farming corporation or agribusiness. *See* 2 Collier, Bankruptcy ¶ 303.04[2] (15th ed. 1980).

■ The court concludes that both of the debtors are "farmers" under the Bankruptcy Reform Act of 1978 and, accordingly, that a creditor cannot compel their liquidation in a bankruptcy proceeding under either chapter 7 or chapter 11.

1. Although the applicability of Rule 11–42(e), which prohibited the conversion of a Chapter XI case to a Chapter VII case without the debtor's consent, was not discussed, it evidently was the exclusion of corporations from the

definition of "farmer" under the prior Act that permitted the court in *In re Maplewood Poultry Co.,* 2 B.R. 545 (Bkrtcy.D.Me.1980), a Chapter XI case, to appoint a receiver to supervise the liquidation of a poultry company.