**In re BLANTON SMITH CORPORATION, d/b/a Greenbrier Egg Farms, Greenbrier Feed Mill and the Blanton Smith Hatcheries, and Grubbs Farms, Inc., Debtors.**

**Bankruptcy Nos. 380–01019, 380–01020.**

United States Bankruptcy Court,
M.D. Tennessee.

Nov. 25, 1983.

Thomas E. Ray, Chattanooga, Tenn., trustee.

Kyle Weems, Chattanooga, Tenn., for trustee.

Robert P. Ziegler, Nashville, Tenn., for Blanton Smith.

Paul E. Jennings, Nashville, Tenn., for Grubbs Farms.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on motion of the successor trustee Thomas E. Ray to convert these Chapter 11 cases to Chapter 7 of the Bankruptcy Code. Upon testimony of witnesses, exhibits, statement of counsel and the entire record, this court concludes that the trustee's motion should be sustained.

The following shall represent findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

The debtors Blanton Smith Corporation and Grubbs Farms, Inc. (hereinafter referred to collectively as "Blanton Smith") filed voluntary Chapter 11 petitions in this court on April 9, 1980. Both debtors were engaged in the production and wholesale marketing of eggs in the Middle Tennessee area. Irwin A. Deutscher was appointed trustee in these cases on December 12, 1980.

After several hearings and the submission by the trustee of various plans of reorganization and amendments to these plans, Blanton Smith's plan of reorganization was confirmed by this court on June 16, 1983. The order of confirmation, styled "Order of confirmation of second amended plan of reorganization and approving certain amendments to the second amended plan and the approval of certain settlements", represented a potpourri of compromises and settlements with the various creditors of the estate. This plan was nevertheless confirmed by the court since it had the approval of virtually all the creditors and conformed with the provisions for confirmation set forth in 11 U.S.C.A. § 1129 (West 1979).

The plan began to flounder immediately after confirmation. The successor trustee Thomas Ray testified that on June 30, 1983, Blanton Smith's bank account showed a negative balance of approximately $22,-871.50. This negative balance had increased to $29,293.91 by July 31 and on August 31, the bank account showed a deficit of approximately $47,734.14. Blanton Smith defaulted in its plan payments to Springfield Production Credit Association (hereinafter "SPCA"), one of the major creditors of the reorganized debtor, soon after confirmation. SPCA thereafter sought relief from this court to foreclose on the entire flock of approximately 100,000 chickens used in Blanton Smith's egg operation, which was collateral for Blanton Smith's debt to SPCA. This court concluded that no post confirmation stay existed and SPCA repossessed and sold the chickens. SPCA also foreclosed on the real property possessed by Blanton Smith. This property was scheduled to be sold at foreclosure sale the day after this motion to convert was heard.

The successor trustee further testified that other creditors were not receiving payments as provided for under the plan, the debtors had minimal physical assets and Blanton Smith's egg business had ceased operations. In his opinion, the reorganization plan could not possibly be consummated and the only remaining viable alterna-

tive was liquidation of certain remaining assets. The trustee's bleak assessment of Blanton Smith's reorganization was corroborated by the testimony of Blanton Smith, the President of Blanton Smith Corporation.

Mr. Smith also testified that, after the plan of reorganization was confirmed, he signed a "Voting Trust Agreement" with the trustee Irwin Deutscher. In this agreement, Blanton Smith agreed to "assign and deliver his share certificates to the Trustee, who shall cause the shares represented thereby to be transferred to him, as voting trustee, on the books of the Corporation." This voting trust was to continue for ten years from the date of the agreement, with the trustee having the exclusive right to vote upon such shares or to give written consents in lieu of voting thereupon subject to certain limitations.

In the midst of the turmoil surrounding Blanton Smith's aborted plan, Irwin Deutscher resigned as trustee. On October 18, 1983, this court appointed Thomas Ray as successor trustee. After completing an accounting of these bankruptcy estates, the successor trustee decided to file this motion to convert these cases to Chapter 7. The trustee took this action on the basis that the reorganization plan had vested the trustee with absolute control of the reorganized debtor's stock.

■ The only issue confronting the court at this time is whether these Chapter 11 cases should be converted to cases under Chapter 7 pursuant to 11 U.S.C.A. § 1112 (West 1979). In a previous opinion entered in these cases, Bankruptcy Judge Russell H. Hippe, Jr. determined in a detailed analysis that Blanton Smith was a farmer as defined by § 101(17) of the Bankruptcy Code and therefore § 1112(c) prohibited conversion of these cases to Chapter 7 unless such conversion was requested by the debtors. *In re Blanton Smith Corp.*, 7 B.R. 410, 412–414 (Bkrtcy.M.D.Tenn.1980). This court is persuaded that Judge Hippe's conclusion was correct. The successor trustee nevertheless argues that his request for conversion can now be granted on the basis that (1) the reorganization plan vests the trustee with control of the reorganized debtor's stock and therefore, for all practical purposes, the trustee is the debtor and can request conversion on the debtor's behalf or (2) the reorganized debtor is no longer a farmer as defined by the Bankruptcy Code and therefore the § 1112(c) restrictions on converting a farmer to Chapter 7 no longer apply.

This latter argument need not be addressed since the court is of the opinion that the reorganization plan has restructured the debtors in such a way as to vest total control of the reorganized corporation in the successor trustee. The "first amendment to the second amended plan" provides that upon confirmation all stock of Blanton Smith will be cancelled and new stock authorized. The amendment explicitly states:

"Forty-Nine percent (49%) of such authorized stock will be issued to Blanton Smith, Jr. provided that he executes a Voting Trust Agreement making such stock subject to a voting trust for seven years from the Effective Date of the Plan. The voting trust will grant the Trustee under such trust *the absolute power to vote such stock and act as and for the shareholder holding such stock for the duration of the voting trust.*" (emphasis added).

The remaining 51% of the stock was not issued and apparently remained treasury stock of the corporation subject to the control of the corporation's ownership.

This provision of the plan clearly places all authority to make decisions on behalf of the reorganized corporation in the trustee, who is entitled to vote the entire issued stock. The voting trust agreement executed by Blanton Smith, Jr., merely implements this term and contains no language to contradict it. In any event, the voting trust agreement could not alter the express provisions of the confirmed plan without court approval. *See* 11 U.S.C.A. § 1127(b) (West 1979).

When Thomas Ray replaced Irwin Deutscher as trustee, he succeeded to all the powers held by his predecessor, including the authority to vote the corporation's

stock. *See* Fed.R.Bank.P. 2012. He may therefore move on behalf of the debtor to convert this case to Chapter 7 pursuant to § 1112(b). 11 U.S.C.A. § 1112(b) (West 1979) provides in relevant part:

"(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

.     .     .     .     .

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; . . . ."

■ Both of the aforementioned conditions have been met in these cases. These Chapter 11 debtors are clearly "beached whales" which have no opportunity to reorganize. The reorganized debtor has ceased operations and is in material default to virtually all creditors under the plan. This court will accordingly enter an order granting the trustee's motion on behalf of the debtors to convert this case to Chapter 7 and appointing Thomas E. Ray to serve as interim trustee in these Chapter 7 cases pursuant to 11 U.S.C.A. § 701(a) (West 1979).

In making this decision, the court takes no position on the legitimacy of the voting trust provisions in this Chapter 11 plan. The court merely notes that no party in interest objected to this arrangement, and their decision not to object binds them to the provisions of the confirmed plan for the purposes of this hearing. *See* 11 U.S.C.A. § 1141(a) (West 1979).

IT IS, THEREFORE, SO ORDERED.