CUDAHY, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority’s analysis of the sale of farm machinery, but, applying the same principles to the rented farm land, I would remand to the bankruptcy court to determine whether the land rentals were not equally “farm income.” Both the land and the machinery were capital employed for farming operations. Presumably in the face of economic distress, Armstrong sold off the machinery and leased the land to effect a retrenchment in his operations. I agree with the majority that, since the machinery sale was integral to his farming operations, its proceeds should be deemed “farm income.” It seems to me entirely possible that the land rentals are for the same reason equally “farm income.”
I certainly agree with the general proposition that mere ownership of farm land, standing alone, does not establish the landowner as the owner of a “farming operation” under section 101(17). Congress did not intend to shield from involuntary bankruptcy a non-resident landowner whose rents happened to derive to some degree from farming operations taking place on his land. Rather, Congress established protection for those whose incomes are inherently cyclical and somewhat unpredictable, as are those of traditional farmers, subject to the vagaries and whims of weather and pestilence, yield and demand. *1031 I think that the fact Armstrong actually helped work the land is relevant, though hardly determinative. The essential question here is whether the land rental was an integral part of Armstrong’s farming operation. The prior and proposed uses of the rented land are, of course, relevant.
If Armstrong was forced temporarily to rent this land for the same reason he was forced to sell his machinery — presumably to salvage what he could of his financially troubled farm — then the lease proceeds may be seen as income inherently tied to the uncertainties of farming and thus derived from a farming operation. Similarly, if Armstrong can show a firm purpose to farm this acreage again in the near future, the rental income could qualify as an integral part of his farming operation. On the other hand, if the facts suggest that Armstrong has disposed of the land, cut his losses and abandoned the land as part of his own farming operation, then Armstrong looks like an owner only of land, not of a farming operation. In any event, the consequences of Armstrong’s financial distress in farming should not lead mechanically to the conclusion that he is no longer a “farmer.”
The facts of this case — that this is the first year of the lease, that the farm was financially troubled, that Armstrong participated in actually operating the farm on the leased land, that the land historically was farm land — suggest that the rental income might be treated as integral to Armstrong’s own farming operation. The majority relies, however, on the facts that Armstrong received cash up front (and thus did not participate in the immediate agricultural risk) and was not obligated to assist in operating the farm.
On the record before us, I cannot conclude whether, in the totality of the circumstances, the rental income is “received” from Armstrong’s farming operation. I would vacate and remand to the bankruptcy court to determine whether the land under lease is part of Armstrong’s ongoing farming operation or whether it is a distinct and separate venture. This question allows no neat distinctions. Congress has provided only rough guidelines in defining what farm income is. Given the complex and difficult challenges to farmers today, it is appropriate for courts to try to draw realistic distinctions, as must be done here, on a case-by-case basis, focusing on whether the income in question is essentially derived from a farming operation that is owned or operated by the recipient of the income and that reflects the traditional farming risks of cyclical and unpredictable income.
This attention to the factual context surrounding the production of income finds support in recent cases construing section 101(17) in similar situations. In In re Dakota Lay’d Eggs, 57 B.R. 648 (Bankr.N.D.1986), the court cautioned that in characterizing income earned by an agri-business enterprise,
the determination must be made by considering the character of the business and whether its income is derived from its own farming or production efforts as opposed to the farming and production efforts of others_Is it a typical farming activity and, if so, whose farming activity is it ... ?
Id. at 656. See also In re Blanton Smith Corp., 7 B.R. 410, 412 (Bankr.Tenn.1980) (corporation that owned poultry, provided feed and supplies and marketed eggs could be farmer under § 101(17)); In re California Land and Equipment Leasing Co., 72 B.R. 1 (Bankr.E.D.Cal.1984) (because debtor “neither owned the land used nor operated the farming operation” he was not a farmer under § 101(17) but rather just a business contractor).
For these reasons, I would direct the bankruptcy court on remand to evaluate the circumstances surrounding the lease to determine if the rental income in question is received from Armstrong’s farming operation. On this aspect of the case, I therefore respectfully dissent.