PER CURIAM:
 

 Paul Douglas McNeal appeals from an order of the district court concluding that he is not a “family farmer” within the definition of 11 U.S.C. § 101(17) and accordingly is not entitled to seek protection under chapter 12 of the Bankruptcy Code, the “Family Farmer Bankruptcy Act,” 11
 
 *171
 
 U.S.C. § 1201-1231, 77 B.R. 315. We affirm.
 

 On March 3, 1987, Appellant McNeal filed a voluntary petition for bankruptcy under chapter 12 of the Bankruptcy Code. Appellee, the Federal Land Bank of Columbia, moved for relief from the automatic stay of chapter 12 and, in the alternative, for dismissal of the petition. The following facts were established at a hearing on ap-pellee’s motion. During 1986, McNeal earned $17,394.12 as deputy sheriff of Jeff Davis County, Georgia. This amount is undisputedly non-farm income. In his petition for chapter 12 relief, McNeal stated that he also received $23,563.00 in “income from farming” in 1986. This $23,563 included $8,860 earned from cleaning out chicken houses owned by other farmers and selling chicken manure as fertilizer, and $1,670 earned from “machine work” performed in the chicken house operation.
 

 To seek relief under chapter 12 of the Bankruptcy Code, a petitioner must qualify as a “family farmer.” The Bankruptcy Code defines a “family farmer” as an “individual ...
 
 engaged in a farming operation
 
 ..., and such individual ... [must] receive
 
 from such farming operation
 
 more than 50 percent of such individual’s ... gross income for the taxable year preceding the taxable year in which the case concerning such individual ... was filed.” 11 U.S.C. 101(17). McNeal, accordingly, may proceed under chapter 12 only if he received more than 50% of his gross income in 1986 from a “farming operation.” Our characterization of the $10,530 income that McNeal obtained from cleaning chicken houses and selling chicken manure will, in turn, be dispositive of that issue. If the $10,530 was income obtained from a “farming operation,” then McNeal is a family farmer and may proceed under chapter 12; otherwise he is not entitled to the protection of that chapter.
 

 The Bankruptcy Code states that “ ‘farming operation’ includes farming, tillage of the soil, dairy farming, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state.” 11 U.S.C. § 101(20). Those examples are not exclusive, however, of other activities that might constitute “farming operations,”
 
 see In re Dakota Lay’d Eggs,
 
 57 B.R. 648, 653 (Bankr.D.N.D.1986); thus we must consider in general terms whether McNeal earned the $10,530 from a “farming operation.”
 

 We perceive at least two reasons why McNeaPs income did not arise from a “farming operation.” First, as the district court noted, the special protections that the Bankruptcy Code makes available to farmers are based on the “cyclical nature of [a farmer’s] business. One drought year or one year of low prices, as a result of which a farmer is temporarily unable to pay his creditors, should not subject him to involuntary bankruptcy.”
 
 In re Armstrong,
 
 812 F.2d 1024, 1027 (7th Cir.) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 32,
 
 reprinted in
 
 1978 U.S. Code Cong. & Admin.News 5787),
 
 cert. denied,
 
 — U.S. -, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987).
 
 [1]
 
 “This rationale is steeped in the concept of risk.”
 
 Armstrong,
 
 812 F.2d at 1027. We consider, therefore, whether McNeal’s chicken-house activities and fertilizer sales were exposed to the inherent risks and cyclical uncertainties traditionally associated with farming. We conclude that they were not. McNeal testified that his customers paid him for the chicken manure “cash up front”; his right to payment did not depend on the success of his customers’ crops.
 

 This case is not like
 
 In re Blanton Smith Corp.,
 
 7 B.R. 410 (Bankr.M.D.Tenn.1980), in which the debtor, an owner of laying poultry, was held to be a “farmer” within the meaning of 11 U.S.C. § 101(17) (1976)
 
 [2]
 
 even though the birds were actually cared for by separate farmers. The debtor in
 
 Blanton Smith
 
 provided food, supplies, and medication for the birds and
 
 *172
 
 marketed the eggs. The debtor’s fortunes were inextricably tied to the traditional risks of farming; if, for example, the birds became sick, the debtor’s egg sales would fail. In this case, McNeal did not own the chickens that inhabited the chicken houses but rather purchased a by-product of the chicken farm. McNeal was essentially in the same position as a food processor that purchased the actual chickens.
 

 Second, although the cleaning of chicken houses to retrieve and sell manure may in some cases be a farming activity, in this case that activity related not to the debtor’s own farming operation but to the farming operations of others.
 
 Cf. In re Dakota Lay’d Eggs,
 
 57 B.R. at 655 (income obtained from sales of eggs purchased from independent farmers was not derived from a farming operation). McNeal provided farmers a chicken coop cleaning service and then sold the collected manure to other farmers. He was not selling the by-product of his own farm but was purchasing and selling the products of other farms. His enterprise was analytically identical to an operation that purchased com from a com farmer and sold it to a hog farmer for feed. The mere purchase and sale of farm by-products is not necessarily a “farming operation.”
 
 [3]
 

 Accordingly, the order of the district court is AFFIRMED.
 

 [1]
 

 . Creditors may not commence an involuntary case under chapter 7 or chapter 11 of the Bankruptcy Code against a "farmer” or a "family farmer." 11 U.S.C. § 303(a).
 

 [2]
 

 .
 
 This section is now found, with amendments, at 11 U.S.C. § 101(19).
 

 [3]
 

 . Contrary to appellant’s contention,
 
 In re Wagner,
 
 808 F.2d 542 (7th Cir.1986), does not stand for the proposition that the tax definition of the term "fanner" should be given significant weight in cases construing the same term under the Bankruptcy Code.
 
 Wagner
 
 holds that the term “gross income" should be given the same meaning for purposes of 11 U.S.C. § 101(17) that.it has in federal income tax law.
 
 See
 
 808 F.2d at 548. McNeal does not argue that the money he obtained from his chicken house operation should be excluded from gross income.