**In re BLACKWELDER HARVESTING CO., INC., Debtor.**

**Bankruptcy No. 89–4521–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 17, 1989.

Malka Isaak, Tampa, Fla., for debtor.

John Anthony, Tampa, Fla., for Citrus & Chemical Bank.

Lynn Englans, Tampa, Fla., Asst. U.S. Trustee.

## ORDER ON MOTION TO CONVERT TO CHAPTER 12

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion filed by Blackwelder Harvesting Co., Inc. (Debtor), who seeks to convert this Chapter 11 case to a Case under Chapter 12. The Motion to Convert is opposed by Citrus and Chemical Bank (Bank) on the basis that the Debtor is not eligible for relief under Chapter 12 of the Bankruptcy Code.

The court heard arguments of counsel, considered the authorities cited in support and in opposition of the Motion and, based on the facts which are undisputed in this case, now finds and concludes as follows:

The Debtor is a Florida corporation and performs citrus harvesting services for citrus growers located in Central Florida. The Debtor does not own any farmland or groves. The Debtor is not involved in planting, growing, irrigation, fertilization, grove care, management, or any other citrus production activity. The Debtor simply employs hundreds of unskilled laborers who are used to harvest citrus for the Debtor's clients, the farmers. The Debtor furnishes a fleet of vehicles and all related equipment used by the laborers.

On June 26, 1986, the Debtor filed its original Petition for Relief under Chapter 11 of the Bankruptcy Code. The present Motion to Convert this Chapter 11 case was filed on August 1, 1989. It is the contention of the Debtor that under the applicable provisions of the Bankruptcy Code, Section 109(f), it is eligible for relief under this newly created relief chapter. This Section provides, in Section 109(f) of the Code, that only a "family farmer" with regular income may be a debtor under Chapter 12 of Title 11. The term "family farmer" is defined by Section 101(17) which includes, in addition to individuals, also corporations. This definition requires that the "family farmer" conducts a "farming operation". "Farming operation" is defined in Section 101(20) and includes "farming, tillage of soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." Section 101(17)(B)(i)(ii) requires in the case of a corporation that more than 80% of the value of its assets consist of assets related to the farming operation—Section 101(17)(B)(i); that its aggregate debts do not exceed $1,500,000 and not less than 80% of its aggregate non-contingent, liquidated debt arises out of the farming operation owned or operated by the corporation—Section 101(17)(B)(ii). The schedules filed by the Debtor indicates that none of the liabilities of this particular Debtor are related to any farming operation and the Debtor's income is not derived nor any of its assets acquired through farming operation.

The legislative history of this newly enacted chapter indicates by its very title that it was designed by Congress to assist financially distressed family farmers to save the family farm from loss through foreclosure proceedings. This legislation, entitled "Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 was designed to protect a specific class of debtors, small farmers, who in the past few years experienced depressed agricultural market and who were exposed to unique risks due to factors not under their control and who were on the verge of losing their family farms, owned by generations. In addition, Congress found that farmers are exposed to inclement weather, insect infestations and draught, none of which are in the control of the farmers, and these natural disasters may create unique, unpredictable financial problems which the farmers are unable to cope with unless there is remedial legislation which permits them to obtain a breathing spell through moratoriums. Congress also found that many farmers are in a precarious position and the value of much farm property has depreciated to a fraction of its prior worth and initial cost. In addition, the forced liquidation of farms which are over-burdened with debt may create a tremendous loss of equity or value in farms for both farmers and their lenders by flooding the market with foreclosed farms for sale. J. Anderson, *An Analysis of Pending Bills to Provide Family Farm Debtor Relief Under the Bankruptcy Code*, printed upon request of Sen. Grassley, 132 Cong.Rec. S15076–15077 (daily ed. October 3, 1986), reprinted at App. 3 *Collier on Bankruptcy*, XXII–19, 20 (15th Ed.1988). However, nowhere in legislative history can one discern a Congressional intent to extend chapter 12 eligibility to any debtor dependent on farming operations owned and operated by others.

This corporate Debtor is not faced with the risks described, but only with normal

business risks. While the Debtor's customers' adverse experiences indirectly impacts the Debtor's business, it is clearly not a basis to permit the conclusion that this Debtor is in fact a "family farmer" for whose benefit Congress enacted this legislation. In order to adjust for a reduction of business, all the Debtor has to do is reduce its seasonal labor, reduce the size of its vehicle fleet and adjust its overall operation to the reduced demand for harvesting services. As noted earlier, the Debtor's liabilities are in no way connected with the financial misfortunes which causes financial distress of farmers such as soil depletion, insect infestation, and inclement weather, but its failure to live up to its legal obligation to withhold FICA taxes and to pay the payroll taxes to the government which is a financial obligation of all employers. The most telling point is that the Debtor does not own any farmland and has no mortgage obligation which is in default and, therefore, the primary congressional aim to save the family farm does not even come into play in the situation under consideration. In the case of *Federal Land Bank of Columbia v. McNeal*, 848 F.2d 170 (11th Cir.1988), the Eleventh Circuit affirmed an order of dismissal of the Chapter 12 case. While *McNeal* involved an activity which under certain circumstances may in some cases be considered to be farming activity, in this instance the cleaning of chicken houses and to retrieve and sell the manure, the activity in *McNeal* related not to the debtors own farming operation but to the farming operation of others.

To accept the proposition that one who renders services to a farmer is also eligible for relief under Chapter 12 would stretch beyond the acceptable limit the construction of this Chapter and would extend to operations which Congress clearly did not consider to be a farming operation. For instance, an individual or a corporation who seeks relief under Chapter 12 under this interpretation, may be eligible for relief if they provided pruning, spraying, irrigation, hauling, or equipment rental services to a farmer. It would also include a veterinarian and a feed store or farm equipment dealer since their operation is also indirectly affected by the success or failure of a farmer who owns a farm and conducts farming operation. In the case of *In re Dutton*, 86 B.R. 651, 18 C.B.C.2d 1323 (Bankr.D.Col.1988), the District Court of Colorado described the controlling distinction between debtors who own or operate their own farm and those who provided services necessary for farming operation conducted by others. In *Dutton* the creditors sought to dismiss the Chapter 12 petition on the basis that the debtor was not eligible for relief pursuant to Section 109(f). In *Dutton*, the Court concluded that services provided by a debtor to a farm owned and operated by another did not incur the risk which a true farmer experiences and the income derived by the debtor was not derived directly from the farming operation.

In sum, this Court is satisfied that based on the authorities cited and the legislative history of this Chapter, this Debtor is not eligible for relief under Chapter 12.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion to Convert to Chapter 12 be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that unless the Debtor is able to proceed toward confirmation, without delay, under Chapter 11 and file a plan and disclosure statement within 45 days from the date of entry of this Order, the matter shall be scheduled, with notice to all creditors, to consider dismissal or conversion to Chapter 7.

DONE AND ORDERED.